Jacob J. Schwartzwald, J.
The principal problem presented in the instant application involves the question of the parent’s immunity to civil suit brought by his three-year-old minor son to recover damages for injuries sustained as a result of the father’s willful and wanton tortious acts while driving an automobile in which the infant was a passenger.
Defendant moves under subdivision 2 of rule 107 of the Rules of Civil Practice to dismiss the complaint upon the ground that the plaintiffs, infant son and wife of the defendant, do not have the legal capacity to sue herein or, in the alternative, to dismiss the second cause of action, wife versus husband, for loss of the infant’s services and for medical expenses.
The accident occurred in New Jersey. It is alleged that the defendant, father of the infant plaintiff, while operating his auto on the New Jersey Turnpike on November 12, 1956, was guilty of “wilful and wanton acts of misconduct.” The particular acts consisted of driving with the prior knowledge that his ‘ ‘ mind and senses were befogged and benumbed as a result of imbibing intoxicating beverages with the prior knowledge that he was sleepy and drowsy due to lack of sleep; for driving at an excessive rate of speed while in such condition despite the protestations of the infant’s mother, wife of the defendant; knowing that by continuing to operate the vehicle under such conditions, he was ‘ ‘ flirting with obvious, known, manifest, evident and predestined danger and injury to the infant. ’ ’ The defendant fell asleep at the wheel causing the auto to leave the highway, resulting in serious injuries to his son.
Defendant contends on this application that both under New Jersey law, where the accident occurred, and under New York law the plaintiffs do not have legal capacity to sue, on the ground that such actions may not be maintained by an unemancipated child against his father for the father’s alleged tortious acts.
But it is the plaintiffs’ contention that this action is not based upon the defendant’s negligence. Such action, if predicated merely upon ordinary negligence, would concededly be barred under both New Jersey and New York law. (Reingold v. Reingold, 115 N. J. L. 532; Damiano v. Damiano, 6 N. J. Misc. Rep. 849; Mannion v. Mannion, 3 N. J. Misc. Rep. 68; Cannon v. *451 Cannon, 287 N. Y. 425; Sorrentino v. Sorrentino, 248 N. Y. 626; Siembab v. Siembab, 284 App. Div. 652; Thickman v. Thickman, 88 N. Y. S. 2d 284.)
Instead, the plaintiffs claim that their complaint herein is founded upon “ wilful and wanton acts and misconduct ” of the defendant, all of which are connected with the defendant’s operation of his motor vehicle and that under such circumstances no immunity attaches or should attach to the parent.
Since the accident out of which the causes of action arose occurred in the State of New Jersey, the law of the place where the tort was committed must govern. (Kerfoot v. Kelley, 294 N. Y. 288; Mertz v. Mertz, 271 N. Y. 466; Thickman v. Thickman, supra; Hopkins v. Amtorg Trading Corp., 265 App. Div. 278; La Force v. Cataract Stor. Co., 162 Misc. 657.)
An examination of the New Jersey law reveals that the State courts have adopted the majority prevailing view in the United States that a parent may not be sued by an unemancipated minor child for tort based upon ordinary negligence. The question of a wanton or willful tort has not been passed upon in that State.
There being no showing to the contrary, it must be presumed that the common law of New Jersey is the same as that of New York. (Friedman v. Greenberg, 110 N. J. L. 462; Bodine v. Berg, 82 N. J. L. 662; Arams v. Arams, 182 Misc. 328, 332.)
While New York has refused to allow an action based upon the negligence of the parent, there is nevertheless every indication that the immunity which attaches to the parent for ordinary negligence does not extend to situations where injuries were inflicted as a result of the parent’s willful or wanton misconduct. (Cannon v. Cannon, 287 N. Y. 425, supra; Siembab v. Siembab, 284 App. Div. 652, supra; Meyer v. Ritterbush, 196 Misc. 551.)
In Cannon v. Cannon (supra), involving an infant passenger suing his parent as owner and driver of the motor vehicle, the Court of Appeals held (pp. 427-428) that: “ we deal with that natural kinship between parent and child which involves legal duties peculiar to that relationship, and as to which both reason and authority dictate our adherence to the rule of the Sorrentino case (supra).”
The court went on to state (pp. 428-429): “ In the exercise of that discretion and the performance of duties imposed by law through no choice by the parents, they are held to no higher standard of care than the measure of their own physical, mental and financial abilities to provide for the well-being of their child. Lack of means, physical weakness or mental incapacity may cause parents to tolerate conditions in the family home which *452 are unsafe and which might afford a basis for liability to one coming to the premises as an invitee or licensee. Not yet, however, have our courts granted an unemancipated child — whom the law decrees to be a member of that household — the right to hold his parents in damages for unintended personal injuries resulting from such conditions.” (Emphasis supplied.)
Again on page 429, the court emphasized that: “ In the absence of a statutory sanction, we are not prepared, in cases where wilful misconduct by the parent is not a factor, to inject the disruptive risk of tort liability between parents and their unemancipated children, in which relationship both parents and children —by nature and by law — have reciprocal duties to perform which still make for family unity.” (Emphasis supplied.)
Noteworthy, in this connection, is the fact that three Judges in Sorrentino v. Sorrentino (248 N. Y. 626, supra), Cardozo, Ch. J., Crane and Andrews, JJ., dissented and voted to reverse the Appellate Division decision sustaining the trial term’s dismissal of the complaint. The three dissenting Judges voted to sustain the complaint in an action by a minor child against the parent to recover for personal injuries based upon negligence only.
Also, the Appellate Division, in Siembab v. Siembab (284 App. Div. 652, supra), gave every indication of sustaining a complaint based upon the parent’s willful misconduct had the plaintiff therein included sufficient factual averments to support the general allegations of willfulness. The court stated (p. 654): “ We think the ‘ wilful misconduct ’ exception to the rule requires some allegation of facts to show in what way the parent is alleged to have willfully injured the child; and that the use of the words 1 willfully ’, ‘ wantonly ’ and 1 culpably ’, without factual allegations to support them, does not change the nature of the action so as to.take it out of the rule which precludes an unemancipated child from bringing an action against his parent for damages for personal injuries sustained caused by the negligence of the parent. As no such factual allegations are set forth in this complaint, we hold that it does not state a cause of action against the defendant-appellant.” (Emphasis supplied.)
Testing the instant cause of action in the light of the foregoing pronouncements made by the Court of Appeals and the Appellate Division, this court could arrive at but one conclusion. Under the common law of this State such action as alleged in the instant cause is permissible and no immunity therefrom attaches to the parent.
Furthermore, an exhaustive examination de novo of the problem reveals most convincingly that any other conclusion would be *453 contrary to law. It never was the intention of the common law to perpetuate a rule which has no support in reason, even assuming that ample cause therefor once existed. The court has a duty to bring the common law into conformity with present day standards of wisdom and justice. Where traditional common-law rules of negligence have resulted in injustices, they have been altered accordingly. (Woods v. Lancet, 303 N. Y. 349, 354.)
The common law expands with reason, living and growing in response to the needs of the community and the development of the nation (Oppenheim v. Kridel, 236 N. Y. 156, 164).
Historically there is nothing in the English decisions to suggest that under the early common law a child could not sue a parent for a personal tort. (See Dunlap v. Dunlap, 84 N. H. 352.)
The first reported case in this country appeared in 1891, Hewlett v. George (68 Misc. 703). The court there refused to permit a suit by a minor child against the mother for wrongfully and maliciously causing the child to be incarcerated in an insane asylum. Without citation of authority, the court adopted the theory that it would violate public policy to allow such an action. The reason of the court follows (p. 711): “ But, so long as the parent is under obligation to care for, guide and control, and the child is under reciprocal obligation to aid and comfort and obey, no such action as this can be maintained. The peace of society, and of the families composing society, and a sound public policy, designed to subserve the repose of families and the best interests of society, forbid to the minor child a right to appear in court in the assertion of a claim to civil redress for personal injuries suffered at the hands of the parent. The state, through its criminal laws, will give the minor child protection from parental violence and wrongdoing, and this is all the child can be heard to demand.”
The Hewlett case was cited and followed in 1903 by McKelvey v. McKelvey (111 Tenn. 388) where the court held that a father, after brutally beating his minor child, was immune from suit because it was declared to be against public policy.
Then came the extreme case in 1905 of Roller v. Roller (37 Wash. 242) where a minor daughter, having been raped by her father, was denied a civil action against her parent. Concerning this case, Harper on Law of Torts (pp. 626-627, § 285), said:
‘ ‘ To deny a recovery in damages to a daughter against a father who has been convicted of raping her on the ground that it would tend to disturb the beauty, tranquillity, and sanctity of that home is nothing short of absurdity.”
While the great weig’ht of authority sustains the rule that a minor child cannot sue a parent in tort, the following cases dem *454 onstrate that the tendency has been, whenever possible, to modify, differentiate, limit or repudiate the doctrine where not in conformity with modern conditions, particularly when the court has found that the domestic tranquillity of the home will not be disturbed or where the acts complained of have already upset family life. (Dunlap v. Dunlap, 84 N. H. 352, supra [employee son against employer father, insured, based on negligence]; Radelicki v. Travis, 39 N. J. Super. 263 [infant against father’s employer based on father’s negligence]; Adams v. Nadel, 124 N. Y. S. 2d 427 [infant ward against foster parent for negligence occurring prior to adoption]; Schomber v. Tait, 207 Misc. 328 [minor child against automobile owner based upon father’s negligence] ; Rozell v. Rozell, 281 N. Y. 106 [infant brother against infant sister based upon negligence]; Clasen v. Pruhs, 69 Neb. 278 [minor against parent for assault and battery].)
Statutory law has also shown a leaning toward more liberality. Married persons now have a right of action against a spouse for wrongful or tortious acts (Domestic Relations Law, § 57).
The doctrine of the preservation of domestic tranquillity, which grants to the parent the right of immunity for tortious acts committed against minor children, was adopted by the courts as a matter of public policy. Its purpose was to uphold, protect and sustain the family unit as a basic, living pillar of our society under parental discipline. Authority was vested in the father, or other parent, as head of the house. The law sought to shield the family unit from disruptive, internal disturbances. It is based upon the assumption that the parent will care for, guard and control the infant and other members of the family unit. That is his obligation. It was proper, therefore, for the courts to grant him immunity from the commonplace failures bound to occur in the course of daily life in every household, each one being peculiarly different from the other.
Quite probably the dearth of cases prior to the beginning of the current century reflects the standard of mores actually in vogue, in that actions against a parent were deemed violative of the moral standards of the times. There being no recorded cases either way on the point, it may be safe to say that the bringing of the Hewlett case (68 Miss. 703, supra [1891]) marked the beginning of the assault upon the rigidity of the parental immunity rule.
Conceivably the court today would not arrive at the same conclusions reached in the three early cases involving incarceration in an insane asylum, a brutal beating and rape. Though not disagreeing with the necessity of granting a parent such immunity as may be necesary to retain the cohesiveness of the family as the *455 most important basic unit of society, the court is of the opinion that it was never intended that such doctrine should become a protective cloak, under civil law, for willful and wanton offenses.
The extent to which the court will go in protecting the rights of a child is pointedly illustrated by a recent Court of Appeals decision, Woods v. Lancet (303 N. Y. 349, supra). The court there held that an unborn infant, after birth had a right to sue a tort-feasor for injuries sustained while in útero. To come to this conclusion the court was compelled to reverse an earlier decision.
There and in many other cases the common law has been changed, remodeled and modernized. The common law is not static, but flexible, responding to the stresses and strains of changing needs. It prides itself in being adaptable in providing remedies for wrongs even where previously nonexistent. (Rozell v. Rozell, 281 N. Y. 106, supra.)
Recent decisions of other courts sustain the plaintiff’s position herein.
The Oregon Supreme Court recently (1950) affirmed on appeal a judgment obtained by the personal representative of the deceased 17-year-old child passenger against the personal representative of the deceased’s father driver due to the father’s gross negligence and intoxication while driving an automobile. In this case the court quoting from Dunlap v. Dunlap (84 N. H. 352, supra) said: ‘ ‘ But there may be acts which clearly are not to be referred to such relation. The father who brutally assaults his son or outrages his daughter, ought not to be heard to plead his parenthood and the peace of the home as answers to an action seeking compensation for the wrong. The relation is rightly fortified by certain rules. Outside that relation, the rules are inapplicable; and any attempt to apply them leads to irrational and unjust results.” (Cowgill v. Boock, 189 Ore. 282, 298-299.)
In reverse it is analogous to the case where an infant murders his parents and then seeks the sympathy of the court, claiming to be an orphan.
In Wright v. Wright (85 Ga. App. 721) the Georgia Court of Appeals held that an infant passenger may sue a parent for injuries sustained as a result of the father’s willful or malicious wrong in exposing the child’s life and health to dangers inherent in the parent’s driving while drunk.
In Emery v. Emery (45 Cal. 2d 421) the court held that a father was not immune from suit brought by his unemancipated minor daughters for alleged willful misconduct concerning the father’s automobile in which the daughters were injured while passengers and which was being operated by a minor unemancipated son.
*456 In Canada an insured father was held responsible for negligently backing an auto into his son. The court said: ‘ ‘ however repugnant it may seem that a minor child should sue his own father ’ ’ but stated that is was ‘ ‘ equally repugnant that a child injured by his father’s negligent act, perhaps maimed for life, should have no redress for the damages he has suffered.” (Fidelity & Cas. Co. v. Marchand, 4 D. L. R. 157,166 [1924].)
The excerpt from Cannon v. Cannon (287 N. Y. 425,427, supra) quoted above, is obiter dictum and as such does not constitute a binding precedent on this court. Nevertheless it points the way to a declaration of the public policy of this State that a parent shall be civilly responsible for a willful or malicious injury inflicted upon an infant child.
That there is no decisional law in New York in which such a claim has been enforced is no bar to the instant action. The court feels that it is acting in the finest common-law tradition by adapting and altering, if necessary, the decisional law to produce common sense justice (Woods v. Lancet, 303 N. Y. 349, supra).
It is a generally wholesome rule to grant the parent immunity from unintentional personal torts which occur within the scope of domestic relations. The security, peace and tranquillity of the home, being the very foundation upon which our government rests, must be protected.
Nevertheless the court is of the firm opinion that when a parent knowingly and willfully insists upon driving an auto at an excessive rate of speed while his senses are befogged and benumbed from drink and lack of sleep, he has departed from and relinquished the unique and exalted position as head of the family. He has shown himself unworthy to be considered the guardian of the family. By wantonly subjecting his child to probable and certain injury, he forfeits all claim to immunity. Such wanton acts remove from his person the cloak of immunity granted to him upon the assumption that he would care for the needs and the welfare of his child. A suit upon behalf of the infant cannot properly be deemed the disrupting cause of the family’s disunity when the parent by his misdeeds has already caused the tranquillity of the family unit to be disturbed and shattered. It would be distinct disservice not only to the family, but to the State, to place the court’s stamp of approval upon the individual who betrayed his trust by maliciously causing injury to his child or ward.
Our common law cannot hope to survive by stubborn adherence to decisions written for a different world. We cannot and should *457 not apply seventeenth and eighteenth century rules to twentieth century conditions.
The complaint contains enough factual averments of the defendant’s willful misconduct which, if proven, are sufficient to sustain the complaint herein. (See Siembab v. Siembab, 284 App. Div. 652, supra.)
Motion to dismiss the infant’s cause of action is denied.
As regards the other portion of the motion herein, plaintiff mother, having alleged that she supported the child, the motion to dismiss is denied.
Settle order on notice allowing defendant 20 days to serve an answer.