RODEBAUGH *v.* GRAND TRUNK WESTERN
RAILROAD COMPANY.

1. PARENT AND CHILD — PARENT'S LIABILITY FOR UNINTENTIONAL TORTS.
   Preservation of a parent's right to discipline his unemancipated minor children is the basic policy behind the rule of parental immunity from liability for unintentional torts.

2. COURTS—PRECEDENTS.
   The judiciary has the duty to re-evaluate judicial precedents in the light of changing circumstances of life here.

3. PARENT AND CHILD—REMEDIES—BURDENS.
   Children should not be left remediless for grievous injuries resulting from their parents' wanton acts, but yet an undue burden should not be imposed on parents who are duty-bound to discipline and control their children.

4. SAME—PARENTAL FUNCTIONS.
   Parental functions are activities which directly relate to the parental duties of care and supervision of the child, such as physical punishment, and provision of food, clothing, housing, medical and dental services, and other care.

5. SAME—TORTS—INTENT—WILFUL AND WANTON MISCONDUCT.
   Unemancipated minors may bring suit against their parents for personal injuries resulting from intentional acts, gross negligence, and wanton and wilful misconduct in activities which do not involve an exercise of parental care, discipline, and control.

6. SAME — THIRD-PARTY DEFENDANT — COLLISION WITH RAILROAD TRAIN.
   Father of plaintiff, an unemancipated minor, was improperly dismissed as a third-party defendant in action against railroad

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 3, 5, 6]  39 Am Jur, Parent and Child §§ 88–92.
   Liability of parent or person *in loco parentis* for personal tort against minor child.  19 ALR2d 423.
[2]  20 Am Jur 2d, Courts §§ 186, 187.
[4]  39 Am Jur, Parent and Child §§ 46, 47.
[7]  5 Am Jur 2d, Appeal and Error § 1009.

for injuries sustained in collision with a train, since the father may be held liable upon proof of his wanton misconduct and absence of exercise of parental care.

7. COSTS—PUBLIC QUESTION—PARENT'S IMMUNITY FROM TORT—LIABILITY TO CHILD.

No costs on appeal are allowed in action by minor against railroad company for injuries sustained in crossing accident, where defendant's third-party complaint against father of the minor had been improperly dismissed, a public question being involved in a parent's immunity from tort liability to his child (GCR 1963, 204.1).

Appeal from Kalamazoo; Fox (Raymond W.), J. Submitted Division 3 June 14, 1965, at Grand Rapids. (Docket No. 320.)   Decided October 25, 1966.

Complaint by William Lee Rodebaugh, Jr., by Buel Crouch, his next friend, against Grand Trunk Western Railroad Company, a Michigan corporation, for injuries allegedly arising when a car in which plaintiff was a passenger collided with defendant's train.   Third-party complaint by Grand Trunk Western Railroad Company against William Lee Rodebaugh, Sr., plaintiff's father, driver of the automobile in which plaintiff was a passenger when injured, for liability over, due to third-party defendant's alleged gross negligence.   Third-party defendant's motion for summary judgment granted. Defendant Grand Trunk Western Railroad Company appeals.   Reversed and remanded.

*Earl C. Opperthausen* and *Stratton, Wise, Early, Starbuck & Lennon* (*Charles E. Starbuck*, of counsel), for defendant Grand Trunk Western Railroad Company.

*Doyle, James & Dark* (*J. William Dark*, of counsel), for third-party defendant William Lee Rodebaugh, Sr.

McGregor, J.   The unemancipated minor plaintiff was a passenger in the automobile owned and driven by his father, William Lee Rodebaugh, Sr., when it collided with one of defendant Grand Trunk's trains.

When the minor plaintiff commenced a negligence action against the railroad, the railroad filed a third-party complaint[1] against plaintiff's father, alleging that he drove in a grossly, wilfully and wantonly negligent manner in failing to stop his automobile after seeing the train for a long period of time and in attempting to race the train to the grade crossing.   The third-party action was begun to obtain contribution from the plaintiff's father as a joint tort-feasor, in the event that the defendant railroad were to be found negligent.   The trial court granted the senior Rodebaugh's motion for summary judgment, thereby dismissing the third-party complaint. Defendant railroad brings this appeal from that judgment.

The first issue is whether the plaintiff's father is shielded from liability for injuries inflicted upon his son by gross negligence.   Although the rule in a majority of jurisdictions bars tort actions by unemancipated minors against their parents, there are strong undercurrents to the contrary.

"In recent years indications have appeared of a growing judicial inclination to depart very materially from the broad doctrine that an unemancipated minor cannot maintain a tort action against his parents."   19 ALR2d 423, 427.

What is the reason for the doctrine of parental immunity?   Even the contemporary cases which have carved broad inroads into the immunity rule have recognized that there is justification for parental immunity in a certain area.   Many of the

---

[1] See GCR 1963, 204.1.

cases give a wide variety of reasons, but the only reason that passes the test of critical examination is the natural parental right and obligation of care, discipline, and control over minor children.

"Preservation of the parent's right to discipline his minor children has been the basic policy behind the rule of parental immunity from tort liability." *Emery* v. *Emery* (1955) 45 Cal 2d 421, 429 (289 P2d 218, 223).

"The doctrine of the preservation of domestic tranquillity, which grants to the parent the right of immunity for tortious acts committed against minor children, was adopted by the court as a matter of public policy. Its purpose was to uphold, protect, and sustain the family unit as a basic, living pillar of our society under parental discipline. Authority was vested in the father, or other parent, as head of the house. The law sought to shield the family unit from disruptive, internal disturbances. It is based upon the assumption that the parent will care for, guard, and control the infant and other members of the family unit. That is his obligation. It was proper, therefore, for the courts to grant him immunity from the commonplace failures found to occur in the course of daily life in every household, each one being peculiarly different from the other." *Henderson* v. *Henderson* (1957), 11 Misc 2d 449, 454 (169 NYS2d 106, 112).

"Not yet, however, have our courts granted an unemancipated child—whom the law decrees to be a member of that household—the right to hold his parents in damages for unintended personal injuries resulting from such conditions. Indeed, if within the wide scope of daily experiences common to the upbringing of a child, a parent may be subjected to a suit for damages for each failure to exercise care commensurate with the risk—for each injury caused by inattention, unwise choice or even selfish-

ness—a new and heavy burden will be added to parenthood.  *  *  *

"In the absence of statutory sanction, we are not prepared in cases where wilful misconduct by the parent is not a factor, to inject the disruptive risk of tort liability between parents and their unemancipated children in which relationship both parents and children—by nature and by law—have reciprocal duties to perform which still make for family unity." *Cannon* v. *Cannon* (1942), 287 NY 425, 428, 429 (40 NE2d 236, 238).

The doctrine of parental immunity from tort actions by their unemancipated children seems to have been brought into the legal world in *Hewlett* v. *George* (1891), 68 Miss 703 (9 So 855, 13 LRA 682) which prohibited suit by a minor child against the mother for wrongfully and maliciously causing the child to be incarcerated in an insane asylum.[2] This case has been the parent of absurdity. In *Roller* v. *Roller* (1905), 37 Wash 242 (79 P 788, 107 Am St Rep 805, 68 LRA 893), a daughter was not allowed to sue her father for damages for rape.

It is the duty of the judiciary to re-evaluate judicial precedents in the light of changing circumstances of life in America. Laws are the rules of conduct which enable men to exist in a civilized society. As society evolves so too must the law develop to provide satisfactory precepts for the functioning of contemporary society. The courts of many States have reexamined the parental immunity doctrine within recent years. Some have abandoned the immunity rule in these situations:

---

[2] See the excellent discussion on the origin and development of the immunity rule in the annotation, Liability of parent or person *in loco parentis* for personal tort against minor child, 19 ALR2d 423.

1. Cases involving wanton and wilful misconduct of parents,[3] such as forcing a minor child to ride in an automobile operated by an intoxicated parent,[4] or such as permitting an overtired person to drive at excessive speeds.[5]

2. Cases in which injuries resulted from parental business activities.[6]

3. Cases in which the injuries resulted from activities completely outside the scope of parental functions.[7]

While these theories have been cited by the courts as justification for departure from the immunity rule, most of the cases involved motor vehicle accidents. In order to understand the recent developments it would be well to examine in detail some of the more significant decisions in other jurisdictions.

In *Emery* v. *Emery* (1955), 45 Cal 2d 421, 429 (289 P2d 218, 223), the supreme court of California, by the present Chief Justice, Roger Traynor, in an automobile accident case, held that:

"Since the law imposes on the parent a duty to rear and discipline his child and confers the right to prescribe a course of reasonable conduct for its development, the parent has a wide discretion in the performance of his parental functions, but that discretion does not include the right wilfully to inflict personal injuries beyond the limits of reasonable parental discipline. No sound public policy

[3] *Nudd* v. *Matsoukas* (1956), 7 Ill 2d 608 (131 NE2d 525); *Harbin* v. *Harbin* (1961) 218 NYS2d 308, aff'd 16 App Div 2d 696 (227 NYS2d 1023).

[4] *Cowgill* v. *Boock* (1950), 189 Or 282 (218 P2d 445, 19 ALR2d 405); *Henderson* v. *Henderson* (1957), 11 Misc 2d 449 (169 NYS2d 106).

[5] *Emery* v. *Emery* (1955), 45 Cal 2d 421 (289 P2d 218).

[6] *Signs* v. *Signs* (1952), 156 Ohio St 566 (103 NE2d 743, 46 Ohio App 471); *Dunlap* v. *Dunlap* (1930), 84 NH 352 (150 A 905, 71 ALR 1055).

[7] *Goller* v. *White* (1963), 20 Wis 2d 402 (122 NW2d 193).

would be subserved by extending it beyond those limits. While it may seem repugnant to allow a minor to sue his parent, we think it more repugnant to leave a minor child without redress for the damage he has suffered by reason of his parent's willful or malicious misconduct. A child, like every other individual, has a right to freedom from such injury. Accordingly, we conclude that an unemancipated minor may sue his parent for a wilful or malicious tort."

Traynor distinguished this case in which the complaint alleged wilful misconduct from earlier California supreme court cases involving ordinary negligence,[8] which had held that a minor child has no right of action against a parent for the tort of the latter.

In *Henderson* v. *Henderson* (1957), 11 Misc 2d 449 (169 NYS2d 106, 113), a New York trial judge, in a well-written opinion, following the lead of the California supreme court and an invitation of the court of appeals,[9] stated of the parental immunity rule:

"It was never intended that such doctrine should become a protective cloak, under civil law, for wilful and wanton offenses."

In *Cowgill* v. *Boock,* 189 Or 282 (218 P2d 445, 19 ALR2d 405), the Oregon supreme court held that the estate of a deceased unemancipated minor could sue the estate of his deceased father for wilful or malicious personal tort in a case in which the father compelled his protesting child to ride in an automobile driven by the father, while intoxicated, at

---

[8] *Trudell* v. *Leatherby,* 212 Cal 678 (300 P 7); *Myers* v. *Tranquillity Irrigation District,* 26 Cal App 2d. 385 (79 P2d 419).

[9] *Cannon* v. *Cannon* (1942), 287 NY 425, 429 (40 NE2d 236), in which the court, while holding that a minor child could not sue his parent in tort for ordinary negligence, suggested they would take a different view in cases of wilful misconduct.

a high rate of speed at night, over a mountainous highway.

In *Signs* v. *Signs* (1952), 156 Ohio St 566, 577 (103 NE2d 743 [2], 748, 46 Ohio Op 471), the Ohio supreme court held, "an unemancipated child should have a clear right to maintain an action in tort against his parent in the latter's business or vocational capacity as such child would have to maintain an action in relation to his property rights." In this case, the plaintiff, an unemancipated minor, was injured while on premises used in the business in which his father was a partner.

The supreme court of Wisconsin has adopted what could be termed a "parental functions" immunity rule:

"After a careful review of the arguments for and against the parental immunity rule in negligence cases, we are of the opinion that it ought to be abrogated except in these two situations: (1) Where the alleged negligent act involves an exercise of parental authority over the child; and (2) where the alleged negligent act involves an exercise of ordinary parental discretion with respect to the provision of food, clothing, housing, medical and dental services, and other care. Accordingly, the rule is abolished in personal injury actions subject to these noted exceptions." *Goller* v. *White* (1963), 20 Wis 2d 402, 413 (122 NW2d 193, 198).

A review of these decisions leads to two conclusions: First, no court has completely abrogated the immunity rule. Second, they disagree as to where the holes should be punched in the immunity shield. A sensible rule will allow children to recover damages for injuries resulting from acts outside of the parental relationship but yet not subject parents to legal action for commonplace failures in performance of parental duties. The courts should

not leave children remediless for grievous injuries resulting from their parents' wanton acts, but yet should not impose an undue burden on parents, who are duty bound to discipline and control their children. There is no good sense in granting immunity to parents who rape or shoot or maim their children.

The unique Wisconsin rule has much wisdom to recommend it. It abolishes parental immunity except in the area of parental functions. Parental functions are activities which directly relate to the parental duties of care and supervision of the child. Physical punishment does come within the scope of parental discipline. Maintenance of the home comes within the scope of parental care. On the other hand, the driving of a motor vehicle may not be really a parental function. The Wisconsin rule provides a remedy for obvious wrongs but prevents an undue burden on parental shoulders.

In view of the decision in *Elias v. Collins* (1926), 237 Mich 175 (52 ALR 1118), which held that a minor could not sue his father for injuries resulting from the negligent operation of an automobile, a further distinction must be made. The rule adopted by this Court must retain immunity for ordinary negligence, as do the rules of California (*Emery v. Emery, supra*) and New York (*Cannon v. Cannon, supra*).

Accordingly, this Court rules that unemancipated minors may bring suit against their parents for personal injuries resulting from intentional acts, gross negligence, and wanton and wilful misconduct in activities which do not involve an exercise of parental care, discipline, and control. Since the plaintiff's father in this case may be held liable upon proof of his wanton misconduct and upon proof that he was not acting in an exercise of parental care, he may be joined as a third-party defendant as a potentially liable joint tort-feasor.

The judgment of the trial court dismissing the third-party complaint is reversed and the case is remanded. No costs are awarded because of the public importance of the question involved.

FITZGERALD, P. J., and HOLBROOK, J., concurred.