[No. 37656.    Department Two.    September 30, 1965.]

PAUL HOFFMAN, JR., *as Guardian, Respondent,* v. Phillip S. TRACY, *as Administrator, Appellant.*\*

\*Reported in 406 P.2d 323.

*Gordon, Sager, Honeywell, Malanca, Hager & Peterson,* for appellant.

*Paul Hoffman, Jr.* (of *McCormick, Hoffman & Rees*), for respondent.

Rosellini, C. J.—The plaintiff brings this action on behalf of a child who was injured when an automobile driven by her mother Joyce R. Rood and owned by Gordon K. Harder, who was also a passenger in the car, went off the highway and struck a utility pole. Mrs. Rood, Mr. Harder, and the minor plaintiff's younger brother were all killed in the accident. The administrator of the estates of Mrs. Rood and Mr. Harder was named as the defendant in this lawsuit.

There were no eyewitnesses to the accident which occurred on PSH No. 9, near Montesano, at approximately 2 a.m. on August 4, 1962. The automobile went off the wet pavement on a curve at a point where the speed limit was increased from 50 to 60 miles per hour. The sign indicating the speed limit of 60 miles per hour was knocked down by the vehicle when it left the highway. The automobile left two skid marks of 33 and 36 feet respectively on the shoulder of the road. It traveled a total distance of 66 feet from the point where it left the traveled portion of the roadway to the place where it came to rest. There was nothing to indicate that another vehicle had been involved in the accident.

In the front of the car were two beer bottles without caps and one or two bottle openers. One of these was in the lap of Mrs. Rood. There were two half-cases of beer in the car; and some of the bottles were broken. There was an odor of beer in the car and about the persons of the two adults.

Prior to 4:30 a.m. on the same day, at the mortuary, blood was removed from Mrs. Rood's body with a drain tube, which had previously been used in embalming procedures. During the embalming process a high percentage of embalming fluid flows through the drain tube, and the basic

ingredient of that fluid is formaldehyde. However, the persons who removed the blood testified that the tube had been washed.

The blood was placed in a bottle containing a white powder, which was supposedly an anticoagulant. The container of blood was mailed with an identifying note dated August 6, 1962, to the King County Coroner. An employee of that office, without testing for formaldehyde, conducted a blood alcohol test, which showed a content of .37 per cent. Death can result at .45 per cent.

There was evidence that the presence of formaldehyde in blood will give the same result as alcohol in a test, and where there is a possibility that a blood sample contains formaldehyde, a test should be made to determine whether this substance is present. No such test was given in this instance. Dr. Charles P. Larson, a pathologist and plaintiff's witness, stated on cross-examination that in his opinion the procedure used to clean the drain tube after embalming would not guarantee proper cleaning of the tube. He further stated that the result of a test would be suspect in his mind if blood were drawn as it was in the instant case and not tested for formaldehyde.

The court instructed the jury that it could find for the plaintiff against the defendant, as administrator of the mother's estate, if it found that she was driving the car while intoxicated and that this was a proximate cause of the accident. It also instructed the jury that it could find against the defendant as administrator of the estate of Gordon K. Harder only if it found that he permitted Joyce R. Rood to drive his automobile when he knew or ought to have known that she was intoxicated and that this conduct on his part constituted gross negligence, which was a proximate cause of the accident.

The jury returned a verdict against the defendant in his capacity as administrator of both estates, in the amount of $12,500; and he has appealed from the judgment entered on that verdict.

It is the defendant's first contention that his motions to quash and to strike the evidence relating to the blood alcohol test should have been granted. He maintains that the plaintiff failed to present prima facie proof that the blood sample was free from adulteration, because the evidence was that the blood was removed with a tube which had previously been used for embalming and a witness testified that the only way to properly clean such a tube was to take it apart, which was not done in this instance.

The rule is that when the results of an alcohol test are offered in evidence, the plaintiff must present prima facie proof that both the test chemicals and the sample are free from adulteration which could conceivably introduce error into the results of the test. *State v. Erdman*, 64 Wn.2d 286, 391 P.2d 518; *State v. Baker*, 56 Wn.2d 846, 355 P.2d 806. In the latter case, the defendant presented evidence that both toothache drops and cough medicine could have been present in his mouth in sufficient quantity to affect the results of a breathalyzer test, and the state's evidence showed that the defendant might have been given the test after being under observation for only 14 minutes, while, by its own evidence the minimum period of delay between the taking of the last drink and the taking of breath for analysis must be 15 minutes. This court held that the state had failed to make a prima facie showing that the test results were accurate.

In *State v. Erdman*, *supra*, the defendant contended that since the identity of a white powder which was placed in the blood-sample bottle was not proved, it must be considered an unknown chemical of unknown properties, consequently making the test inadmissible. We held, however, that the state's showing that an anticoagulant, which is a white powder, is customarily placed in blood-sample bottles, and that the test showed no inaccuracies caused by the white powder, was sufficient to establish prima facie that the test was reliable.

Here, the plaintiff presented testimony that the instrument used to extract the blood, which was customarily used

for that purpose, had been cleaned in the customary manner prior to its use. Another witness testified that the manner of cleaning was not reliable; and the high alcohol content shown by the blood test which should have rendered the subject unable to operate a motor vehicle at all, also raises a serious doubt as to the accuracy of the test. But, we cannot say that the plaintiff failed to make a prima facie showing that the test was reliable. There was conflicting testimony, but the testimony tending to show that the test was accurate could have been believed by the jury and conflicting testimony rejected. Tending to corroborate the test's showing of the presence of alcohol in the blood was the evidence that opened beer bottles were found in the car, as well as bottle openers, and one or two glasses.

The question was one for the trier of the facts, and the trial court properly held that it was not within its province to determine which evidence to accept and which to reject. A prima facie showing having been made, it was for the jury to determine the weight to be attached to the evidence.

■ The defendant also contends that the coroner had no authority to analyze the blood and even if he had that the results of the test were confidential. But such authority is found in RCW 68.08.106, which relates to blood and other body specimens taken by the coroner for analysis, and states that the coroner may, either in his discretion or upon lawful request retain such specimens as may be "needed or desired for evidence to be presented in court." *Zenith Transport v. Bellingham Nat'l Bank,* 64 Wn.2d 967, 395 P.2d 498.

Our conclusion that the evaluation of the evidence relating to the blood alcohol test was for the jury, disposes of the defendant's contention that there was no evidence of intoxication and therefore no evidence on which to submit the case to the jury. It also disposes of his contention that no instructions relating to intoxication should have been given.

■ Error is assigned to the refusal of an instruction on "unavoidable accident." We have held that such an in-

struction is proper only where there is affirmative evidence that the accident was unavoidable. *Cooper v. Pay-N-Save Drugs, Inc.*, 59 Wn.2d 829, 371 P.2d 43. No evidence of this kind was presented in this case.

It is contended that the mother is immune from suit brought by her daughter, under our holdings in *Borst v. Borst*, 41 Wn.2d 642, 251 P.2d 149, and *DeLay v. DeLay*, 54 Wn.2d 63, 337 P.2d 1057. In the first of these cases, the child was injured when the father drove a truck over him while engaged in his business. This court held that he was not acting in his parental capacity, and therefore the suit could be maintained. In the *DeLay* case, a father directed his son to remove some gasoline from his logging truck. While the son was in the act of removing the gasoline, it ignited, and as a result the boy suffered injuries for which he sought recovery. We held that the father had acted in his parental capacity in directing him to remove the gasoline, and consequently the suit would not lie.

The opinion in *Borst v. Borst, supra,* contains an exhaustive examination of the authorities in this field of the law and formulates the following statement of policy:

> the foregoing analysis leads us to believe that none of the arguments which have been discussed above provides a logical and just basis for an absolute rule of immunity applicable to all actions arising in tort for the recovery of personal injury damages.
>
> ██ Nevertheless, there do exist, in our opinion, some factors and considerations in connection with the parent-child relationship which justify some immunity of the parent to suit. If those factors and considerations are properly identified and understood, the appropriate scope of the immunity rule will become apparent.
>
> Parenthood places a grave responsibility upon the father and mother. It is their duty to rear and discipline the child. In rearing the child, the parents must provide a home and perform tasks around the home and on the premises. In most cases, it is necessary or convenient to provide a car for family transportation. In all the family activities, the parents and children are living and working together in close relationship, with neither the possibility of dealing with each other at arm's length, as one stranger

to another, nor the desire to so deal. The duty to discipline the child carries with it the right to chastise and to prescribe a course of conduct designed for the child's development and welfare. This in turn demands that the parents be given a wide sphere of discretion.

In order that these parental duties may adequately be performed, it is necessary that the parents be not subject to the risk of suit at the hands of their children. If such suits were common-place, or even possible, the freedom and willingness of the father and mother to provide for the needs, comforts and pleasures of the family would be seriously impaired. Public policy therefore demands that parents be given immunity from such suits while in the discharge of parental duties.

These views accord very closely with those expressed in the concurring opinion of Judge Rossman in *Cowgill v. Boock, supra* [189 Ore. 282, 218 P.2d 445]. "The parental non-liability," says Judge Rossman, "is not granted as a reward, but as a means of enabling the parents to discharge the duties which society exacts." See, also, 43 Harv. L. Rev. 1030, 1078, 1080. We do not determine the question of whether the immunity should be absolute or conditional with respect to acts performed in the discharge of parental duties, as it is not before us.

The reasons for the rule do not exist, and the mantle of immunity therefore disappears, where the tort is committed by the parent while dealing with the child in a nonparental transaction. *Cowgill v. Boock, supra*, concurring opinion of Judge Rossman; 43 Harv. L. Rev. 1030, 1080. We therefore disapprove, as too broad, the holding in *Roller v. Roller, supra* [37 Wash. 242, 79 Pac. 788] (upon which the trial court here justifiably relied), that a minor child cannot, under any circumstances, sue a parent for a tort resulting in personal injuries.

In the course of the opinion, written by Hamley, J., the author cites, as an example of the cases where the parental relationship has been held not to justify immunity, the case of *Cowgill v. Boock*, 189 Ore. 282, 218 P.2d 445, 19 A.L.R. 2d 405, wherein the father, while under the influence of intoxicating liquor, had compelled the son to ride in the family car with him. As the author pointed out, this was a case of willful misconduct, and in such a case the courts

in recent years have uniformly allowed the child a cause of action.

■ The trial court in this case concluded from the *Borst* case that a parent who takes a child in an automobile with him and drives it while he is intoxicated is temporarily abdicating his parental responsibilities and is not entitled to the immunity which is designed to encourage the performance of those responsibilities. We are of the opinion that the trial court was correct in this interpretation of the case. We are aware of no principal of law or reason of public policy which would dictate that parents should be encouraged in this type of action, even though the ride may be for a family purpose. To place a child in such a position of danger cannot be justified except perhaps in a case of extreme emergency, and there was no indication that an emergency requiring the transportation of the child by an intoxicated parent, existed here. The trial court properly instructed the jury that it could find for the plaintiff if it found that the mother was driving while intoxicated and that this was a proximate cause of the accident.

Having taken this view of the case, we need not consider the merits of the defendant's contention that the immunity doctrine should not apply where the parent is deceased.

The defendant complains of the refusal of his requested instructions concerning the burden of proof of the plaintiff. The matters contained in these instructions, insofar as they correctly stated the law, were covered by the other instructions given, and there was no error in refusing them.

The judgment is affirmed.

· DONWORTH, WEAVER, and HAMILTON, JJ., and SHORETT, J. Pro Tem., concur.

---

November 19, 1965. Petition for rehearing denied.