Janice ATTWOOD, Individually and as Mother and Next
Friend of Richard Breck ATTWOOD *v.* The Estate of
Richard Breckenridge ATTWOOD

81-177                                              633 S.W.2d 366

Supreme Court of Arkansas
Opinion delivered May 24, 1982

*Bridges, Young, Matthews, Holmes & Drake,* for appellant.

*Coleman, Gantt, Ramsay & Cox,* by: *Martin G. Gilbert,* for appellee.

JOHN W. BARRON, JR., Special Justice. Janice Attwood, individually and as mother and next friend of Richard Breck Attwood, brings this appeal contending that the court below erred in dismissing her complaint against the estate of Richard Breckenridge Attwood. The suit was dismissed

pursuant to Arkansas Rules of Civil Procedure, Rule 12 (b) (6) for failure to state facts upon which relief can be granted. The lower court found that the family immunity doctrine was a bar to the claim asserted in the complaint.

In her complaint, appellant pled that she and Richard Breckenridge Attwood were divorce some time prior to July 3, 1979 and that he had visitation rights with respect to their child, Richard Breck Attwood. Appellant further pled that on July 3, 1979, Richard Breckenridge Attwood became willfully and intentionally intoxicated and drove a vehicle while so intoxicated with the child as a passenger and also drove at a speed greatly in excess of the posted speed limit, thereby causing the vehicle to leave the roadway and overturn, killing himself and injuring the child, Richard Breck Attwood.

On appeal, appellant urges reversal on two grounds:

(1) The family immunity doctrine violates the constitutional rights of unemancipated minors to equal protection of the laws as guaranteed by the Fourteenth Amendment to the United States Constitution in that it precludes minor children from suing their parents for injuries caused by the negligence of the parents;

(2) The automobile accident in which Richard Breck Attwood was injured resulted not from the voluntary negligence of the father but from the father's willful, reckless and intentional actions and as such the family immunity doctrine is inapplicable.

As we have held many times that we do not rule on constitutional questions if the litigation can otherwise be resolved, we first consider the second of appellant's two points for reversal. *County of Searcy* v. *Stephenson,* 244 Ark. 54, 424 S.W.2d 369 (1968).

Appellee's motion to dismiss, filed pursuant to Arkansas Rules of Civil Procedure, Rule 12 (b) (6), is essentially the same as filing a demurrer before enactment of the new

rules. A demurrer admits any well pled fact. *Files* v. *Hill*, 268 Ark. 106, 594 S.W.2d 836 (1980); *L. A. Green Seed Company of Arkansas* v. *Williams*, 246 Ark. 463, 438 S.W.2d 717 (1969). We, therefore, assume for purposes of resolving the issues presented herein that the facts recited in the complaint are true.

This appeal again brings into focus the family immunity or parental immunity doctrine. This Court in *Rambo* v. *Rambo*, 195 Ark. 832, 114 S.W.2d 468 (1938), held that an unemancipated minor child could not sue a parent for an involuntary tort. The court reasoned that to permit such a suit would interfere with the parent's authority over the child and would, therefore, encourage disobedience. This in turn would interfere with the family harmony. When next called upon to rule on this doctrine, this Court refused to extend the doctrine to include an intentional tort committed by an adoptive father on his adopted son. *Brown* v. *Cole*, 198 Ark. 417, 129 S.W.2d 245 (1939). Recently, this Court was presented with the question of whether the family immunity doctrine should bar recovery by an unemancipated minor from one standing in loco parentis for injuries resulting from an unintentional tort. *Thomas* v. *Inmon*, 268 Ark. 221, 594 S.W.2d 853 (1980). In reaffirming the doctrine, this Court stated:

> "We are not persuaded by appellant's contention that the family immunity doctrine has become a legal anachronism. Nor do we believe that the policy considerations of family harmony and prevention of collusion and fraud are no longer valid. Although more than 40 years have elapsed since *Rambo* we still believe in the sanctity of the family unit.  ... "

This Court has stated its belief that it approves of the so-called family immunity doctrine because it promotes family harmony, preserves discipline and prevents fraud and collusion. It should be pointed out, however, that since *Leach* v. *Leach*, 227 Ark. 599, 300 S.W.2d 15 (1957) spouses have been permitted to sue each other for unintentional torts. In that case, this Court expressly rejected the argument that preservation of family harmony required the prohibition of

suits between spouses. It is interesting to note that the Arkansas Legislature has never seen fit to change the law permitting such suits. It is also noteworthy that brothers can sue sisters and adult or emancipated children can sue their parents. So perhaps more appropriately this should be called the parental immunity doctrine.

A review of cases in various jurisdictions around the country pertaining to the parental immunity doctrine reveals that there has been a change in the philosophy of this country and that the right of the individual to be free from injury is perhaps paramount in many instances to the reasons behind the parental immunity doctrine. *Rigdon* v. *Rigdon,* 465 S.W.2d 921 (Ky. 1970). This was stated in *Black* v. *Solmitz,* 409 A.2d 634 (Me. 1979) in the following manner:

> "The strong trend against across the board application of a rule of parental immunity in tort cases reflects a growing recognition that such a sweeping application results in excessive protection of the interests favored by the rule in derogation of the general principle that there should be no wrong without a remedy."

That such a trend has mushroomed is evidenced by the fact that thirteen states have now abrogated the doctrine at least insofar as motor vehicle accidents are concerned.[1] Other jurisdictions that have been confronted with the doctrine for the first time have refused to apply the doctrine to automobile negligence cases. *Wood* v. *Wood,* 135 Vt. 119, 370 A.2d 191 (1977); *Rupert* v. *Stienne,* 90 Nev. 397, 528 P.2d 1013 (1974); *Hebel* v. *Hebel,* 435 P.2d 8 (Alas. 1967). Some states have repudiated the doctrine in non automobile related cases. *Gibson* v. *Gibson,* 3 Cal. 3d 914, 479 P.2d 648

---

[1]*Lee* v. *Comer,* 224 S.E.2d 721 (W. Va. 1976); *Williams* v. *Williams,* 369 A.2d 669 (Del. 1976); *Sorensen* v. *Sorensen,* 369 Mass. 350, 339 N.E.2d 907 (1975); *Plumley* v. *Klein,* 388 Mich. 1, 199 N.W.2d 169 (1972); *Falco* v. *Pados,* 444 Pa. 372, 282 A.2d 351 (1971); *Rigdon* v. *Rigdon,* 465 S.W.2d 921 (Ky. 1971); *Smith* v. *Kauffman,* 212 Va. 181, 183 S.E.2d 190 (1971); *Streenz* v. *Streenz,* 106 Ariz. 86, 471 P.2d 282 (1970): *Gelbman* v. *Gelbman,* 23 N.Y.2d 434, 245 N.E.2d 192 (1969); *France* v. *APA Transport Corp.,* 56 N.J. 500, 267 A.2d 490 (1968); *Silesky* v. *Kelman,* 281 Minn. 431, 161 N.W.2d 631 (1968); *Nuelle* v. *Wells,* 154 N.W.2d 364 (N.D. 1967); *Briere* v. *Briere,* 107 N.H. 432, 224 A.2d 588 (1966).

(1971); *Peterson* v. *Honolulu,* 51 Haw. 484, 462 P.2d 1007 (1969). State legislatures in Connecticut, North Carolina and South Carolina have enacted statutes abrogating the doctrine in automobile negligence cases.[2] Recently the Restatement (Second) of Torts § 895 G (1979) adopted the following language:

> "(1) A parent or child is not immune from tort liability to the other solely by reason of that relationship.
>
> (2) Repudiation of general tort immunity does not establish liability for an act or omission that because of the parent child relationship is otherwise privileged or is not tortious."

Over the years many exceptions have been made to the rule thereby eroding it further. For example, it does not apply to chidren of legal age or those who are already emancipated at the time of the tort. *Lancaster* v. *Lancaster,* 213 Miss. 536, 57 So.2d 302 (1952).[3] The doctrine is not applied to the unemancipated child who sues his parent for injury to his property or for adjudication of his property rights under a deed or will. *Signs* v. *Signs,* 156 Ohio St. 566, 103 N.E.2d 743 (1952). Another well recognized exception involves negligent and injurious acts by a father while acting in the course of his business or vocation. *Felderhoff* v. *Felderhoff,* 473 S.W.2d 928 (Tex. 1971); *Stevens* v. *Murphy,* 69 Wash. 2d 939, 421 P.2d 668 (1966); *Dunlap* v. *Dunlap,* 84 N.H. 352, 150 A. 905 (1930). Many states have recognized that a child may be permitted to sue the estate of the negligent parent if the parent died as a result of the same accident that injured the child on the basis that the reasons which may have justified barring the child's remedy against a living parent lose much of their force when the parent child relationship is terminated by death.[4] In *Rodebaugh* v. *Grand*

[2]Conn. Gen. Stat. Ann. § 52-572C (Supp. 1979); N.C. Gen. Stat. § 1-539.21 (Supp. 1977); S.C. Code 1976, Section 15-5-210.

[3]It would seem, however, that a suit by an adult child against a parent would be just as disruptive as one by a minor child.

[4]*Johnson* v. *Meyers,* 2 Ill. App. 3rd 844, 277 N.E.2d 778 (1972); *Thurman* v. *Etherton,* 459 S.W.2d 402 (Ky. 1970); *Dean* v. *Smith,* 106 N.H. 314, 211 A.2d 410 (1965); *Palcsey* v. *Tepper,* 71 N.J. Super. 294, 176 A.2d 818 (1962) (dictum); *Brennecke* v. *Kilpatrick,* 336 S.W.2d 68 (Mo. 1960).

*Trunk W.R.R. Co.,* 4 Mich. App. 559, 145 N.W.2d 401 (1966), the Court elected to follow what it called the "Wisconsin" rule which permits children to recover damages for injuries resulting from acts outside the parental relationship, but yet not subject parents to legal action for ordinary and common failures in performance of parental duties. We feel that we should be aware of the present state of the law while deciding this case.

In addressing the issue presented herein, we assume the following allegations to be true. Appellant and the child's father were divorced and the father was exercising his visitation privilege. While so doing, he willfully and intentionally became intoxicated and drove his vehicle while so intoxicated with his child as a passenger and did drive at a speed greatly in excess of the speed limit and of what was prudent and thereby caused the vehicle to leave the roadway and overturn, causing his death and injury to the child. Certainly these allegations if true are tantamount to willful and wanton conduct. This brings us to the issue at hand. That is, should the parental immunity doctrine preclude a child from suing his parent for willful and wanton conduct? This Court in *Ellis* v. *Ferguson,* 238 Ark. 776, 385 S.W.2d 154 (1964) described such conduct as follows:

> "It is not necessary to prove the defendant deliberately intended to injure the person. It is enough if it is shown that indifferent to consequences the defendant intentionally acted in such a way that the natural and probable consequence of his act was injury to the plaintiff. *There is a constructive intention as to the consequences which entering into the willful, intentional act the law imputes to the offender* and in this way a charge which otherwise would be mere negligence becomes by reason of a reckless disregard or probable consequences a willful wrong." (emphasis added)

Willful and wanton conduct is also defined in AMI Civil 2d 401 as follows:

> " . . . that the person knew or reasonably should have

known in the light of the surrounding circumstances that his conduct would naturally or probably result in injury and that he continued such conduct in reckless disregard of consequences."

The issue of whether the parental immunity doctrine should bar a suit by an unemancipated minor against a parent for a willful tort is one of first impression in Arkansas, but has been addressed in other jurisdictions. Every case we have found has made such conduct an exception to the parental immunity doctrine.[5] Thus, in *Hoffman, supra,* the court held that a parent who takes a child in an automobile with him and drives while he is intoxicated is temporarily abdicating his parental responsibility and, consequently, is not entitled to parental immunity which has as its purpose the encouragement of the performance of those responsibilities. In *Cowgill, supra,* the court made the following comments:

"The question that confronts us is whether the father was acting in his capacity as a parent when he took the course which brought death ... to his son. ... Before solving the problem let us suppose that a father, while drunk, brutally beats his daughter or seizing a gun shoots her. Should we say that in acting in such a drunken manner, he was exercising a parental function or would it not be more in keeping with the enlightened views of the day to declare that his drunken action was outside the scope of his parental prerogatives. To hold that such drunken action is within the scope of parental authority would outlaw the child and close all courtrooms to her. ... the mantle of parent nonliability was never intended for a case such as this." as this."

---

[5]*Oldman* v. *Bartshe,* 480 P.2d 99 (Wyo. 1971); *Rigdon, supra; Groves* v. *Groves,* 158 S.W.2d 710 (W. Va. 1968); *Rodebaugh, supra; Hoffman* v. *Tracy,* 67 Wash. 2d 31, 406 P.2d 323 (1965); *Stevens* v. *Murphy,* 69 Wash. 2d 939, 421 P.2d 668 (1957); *Nudd* v. *Matsoukas,* 7 Ill. 2d 608, 131 N.E.2d 525 (1956); *Aboussie* v. *Aboussie,* 270 S.W.2d 636 (Tex. Civ. App. 1954) (dictum); *Wright* v. *Wright,* 85 Ga. App. 721, 70 S.W.2d 152 (1952) and *Cowgill* v. *Boock,* 189 Ore. 282, 218 P.2d 445 (1950).

The issue of preserving the right of the parent to discipline his minor children was addressed in *Emery* v. *Emery*, 45 Cal. 2d 421, 289 P.2d 218 (1955). That court noted that the parent's right to discipline his minor children is the basic policy behind the rule. In commenting on this, the court stated as follows:

> "Since the law imposes on the parent a duty to rear and discipline his child and confers the right to prescribe a course of reasonable conduct for its development, the parent has a wide discretion in the performance of his parental functions but that discretion does not include the right willfully to inflict personal injuries beyond the limits of reasonable parental discipline. ... While it may seem repugnant to allow a minor to sue his parents, we think it more repugnant to leave a minor child without redress for the damage he has suffered by reason of his parent's willful or malicious conduct. A child, like every other individual, has a right to freedom from such injury."

We believe this to be an excellent statement as to the limits of a parent's right to discipline.

In *Nudd, supra*, it was acknowledged that for the sake of family harmony, suits for negligence should be prohibited but that public policy also required that suits for willful and wanton misconduct should be permitted. The court stated its position as follows:

> "To tolerate such misconduct and deprive a child of relief will not foster family unity but will deprive a person of redress without any corresponding social benefit for an injury long recognized at common law."

The fact that willfullness has to be proven should preclude fraud or collusion from being a problem. We think it is clear that a willful tort is beyond the scope of the parental immunity doctrine as it is applied in Arkansas. This Court in *Ellis, supra*, stated that if a person perpetrates a willful tort which injures a person, a constructive intent to injure the person will be imputed. That case also points out

that willful conduct is more than mere negligence. This distinction is also described in *Cowgill, supra,* where the court stated:

> "Negligence and serious and willful misconduct are entirely different in kind. The latter involves conduct of a quasi criminal nature, the intentional doing of something either with the knowledge that it is likely to result in serious injury or with a wanton and reckless disregard of its probable consequences."

The court then met the challenge of the argument that to permit such a suit would disrupt the harmony of the family by stating as follows:

> "By the wrongful conduct of the father in overstepping the bounds of the family relationship, the peace, security and tranquility of the home had already been disrupted. *When the reason for the rule ceases, the rule itself ceases.*" (emphasis added)

For the reasons stated above, we conclude that an unemancipated minor may sue his parent for a willful tort.

The judgment is reversed and remanded.

ADKISSON, C.J., GEORGE ROSE SMITH and HICKMAN, JJ., dissent.

HOLT, J., not participating.

GEORGE ROSE SMITH, Justice, dissenting. Our only three precedents discussing the family immunity doctrine have adhered to a simple and clear distinction: A child can maintain a suit against his parent or against a person *in loco parentis* for an intentional or voluntary injury to the child, but not for an unintentional or involuntary injury. In the pioneer case, involving simple negligence, we held the action was not maintainable. *Rambo* v. *Rambo*, 195 Ark. 832, 114 S.W.2d 468 (1938). In the next instance we upheld an action based upon an adoptive father's having deliberately poisoned his adoptive son — an intentional tort. *Brown* v.

*Cole,* 198 Ark. 417, 129 S.W.2d 245, 122 A.L.R. 1348 (1939). In the third case, involving mere negligence, we refused to abandon the family immunity doctrine despite arguments similar to those now presented. *Thomas* v. *Inmon,* 268 Ark. 221, 594 S.W.2d 853 (1980).

In today's opinion the present majority quotes in support of its conclusion dictum from one Arkansas case —dictum because it was a guest statute case presenting only simple negligence, with the judgment being reversed and the cause being dismissed. *Ellis* v. *Ferguson,* 238 Ark. 776, 385 S.W.2d 154 (1964). But the controlling distinction laid down by our two guest statutes is not that between unintentional and intentional torts. Instead, it is the difference between simple negligence and willful and wanton misconduct in disregard of the rights of others. Ark. Stat. Ann. §§ 75-913 and -915 (Repl. 1979). For that reason guest statute cases should not be even persuasive precedents with regard to the family immunity rule.

In the case at bar we can feel sure from the record before us that this father did not drive his car with the intention of killing himself and injuring his child. Had the father lived it is doubtful that any cause of action against him would have been asserted in behalf of his injured son. That is so because the family immunity rule fairly represents the attitude that prevails within the overwhelming majority of American families — an attitude so firmly held that even human greed will not induce the members of the family to engage in the mockery of a collusive lawsuit having as its sole purpose the enrichment of the family and its lawyers at the expense of an insurance company. Here, however, the situation is not typical, because the father is dead. Even so, the decision may become a precedent, a precedent so fundamentally wrong and so contrary to our prior cases that I cannot let it go into the books without protesting it as best I can.

ADKISSON, C.J., and HICKMAN, J., join in this dissent.