Cite as 2021 Ark. 62

# SUPREME COURT OF ARKANSAS
No. CV–20–421

| | |
|---|---|
| | Opinion Delivered: March 18, 2021 |
| SHERRY TOMEY, GUARDIAN OF THE ESTATE OF NOVALENE KENT, A MINOR<br><br>PETITIONER | A CERTIFIED QUESTION FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF ARKANSAS |
| V. | HONORABLE JAMES M. MOODY, JR., UNITED STATES DISTRICT JUDGE |
| SOUTHERN FARM BUREAU CASUALTY INSURANCE COMPANY<br>RESPONDENT | CERTIFIED QUESTION ANSWERED. |

**RHONDA K. WOOD, Associate Justice**

The parental-immunity doctrine bars unemancipated minors from suing their parents

for involuntary torts. One exception applies when the minor brings a direct-action suit

against an insurance carrier for *uninsured*-motorist coverage. Here, the minor brought a

direct-action suit against an insurance carrier for *underinsured*-motorist coverage. The United

States District Court for the Eastern District of Arkansas, in accordance with Arkansas

Supreme Court Rule 6-8, certified the following question of law:

> Does the State of Arkansas recognize an exception to the parental-immunity doctrine
> when a direct-action suit against a motor vehicle liability insurance carrier for
> *underinsured* motorist coverage is at issue and when *underinsured* motorist benefits are
> the damages requested?

We find no distinction between the two coverages for the purpose of the parental-

immunity doctrine. The reasons justifying the exception for *uninsured*-motorist coverage

apply equally to *underinsured*-motorist coverage. We therefore expand the exception to

cover direct-action claims when underinsured benefits are at issue and answer the certified question in the affirmative.

## I. *Factual Background*

The parties agreed to these facts. In April 2016, Christina Buchanan crashed a Dodge Grand Caravan, killing herself and severely injuring her daughter, Nova, who was a passenger. A third party, Anthony Ray, owned the Caravan. Ray insured the Caravan with The Hartford on a $25,000 bodily-injury liability policy. The Hartford offered the full $25,000 to Nova in exchange for a release of all negligence claims against Ms. Buchanan and Mr. Ray. Nova accepted the settlement through her guardian.

Even so, Nova's medical bills exceeded $25,000. She therefore submitted a claim against Ms. Buchanan's underinsured-motorist coverage with Farm Bureau. The policy's language provided as follows:

> We will pay damages for bodily injury which a covered person is legally entitled to recover from the owner or operator of an underinsured auto. Bodily injury must be caused by an accident arising out of the ownership, maintenance or use of the underinsured auto.

> We will pay under this coverage only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements.

The parties agreed that the mother's negligent operation of Mr. Ray's underinsured Caravan caused Nova's injuries and that Mr. Ray's policy limits were exhausted. But the parties disputed whether Nova, as a covered person, was legally entitled to recover from her mother, the operator of the Caravan.

Farm Bureau maintained that Nova could not recover under Arkansas's parental-immunity doctrine. It accordingly denied Nova's claim against her mother's policy. Nova

2

then filed a direct-action lawsuit against Farm Bureau, which ended up in federal district court. The district court acknowledged that this court has recognized an exception to the parental-immunity doctrine when the source of recovery is *uninsured*-motorist benefits under a motor-vehicle liability policy. The question raised was whether a similar exception existed for *underinsured*-motorist benefits. We answer yes for the reasons explained below.

## II. *Law and Analysis*

The parental-immunity doctrine prohibits unemancipated minors from suing their parents for an involuntary tort. This court created the doctrine in 1938. *See Rambo v. Rambo*, 195 Ark. 832, 114 S.W.2d 468 (1938). We reasoned the doctrine was necessary to maintain the "integrity and stability . . . of the family unit." *Id.* at 835, 114 S.W.2d at 469. We also noted the State could still bring criminal charges against parents for abuse that amounts to a criminal violation. *Id.*

Petitioner correctly points out that the national trend in state courts has been to abrogate the parental-immunity doctrine. *See Fields v. So. Farm Bureau Cas. Ins. Co.*, 350 Ark. 75, 88, 87 S.W.3d 224, 229 (2002) (recognizing most states have either abolished the parental-immunity doctrine, never adopted it, or created exceptions); Brian A. Wamble, *Parental Immunity: Tennessee Joins the National Trend Toward Modification*, 25 U. Mem. L. Rev. 235, 239 (1994) ("[A] majority of jurisdictions have either discarded parental immunity altogether or at least restricted its application."). Despite the trend, the parental-immunity doctrine has survived in Arkansas for over eighty years. We recognize that this is a judicially created doctrine and not derived from common law. Our legislature has not limited or expanded the doctrine since 1938, suggesting tacit approval. *See Chapman v. Alexander*, 307

Ark. 87, 90, 817 S.W.2d 425, 427 (1991) (noting "[l]egislative silence after such a long period gives rise to an arguable inference of acquiescence or passive approval"). While complete abrogation has been raised repeatedly to this court, we have declined to reach this policy decision. If the legislature disagrees with parental immunity, it is free to extinguish it by statute, as it has done with other types of immunity in the past. *Compare Parish v. Pitts*, 244 Ark. 1239, 429 S.W.2d 45 (1968) (abolishing municipal immunity) *with* Act 165 of 1969, now codified at Ark. Code Ann. § 21-9-301 (Repl. 2016) (reestablishing municipal immunity). Absent this, we continue our case-by-case consideration of the doctrine and when exceptions should apply.

Over the years, we created two exceptions to the doctrine. The first exception applies when a child sues a parent for a willful tort. *Attwood v. Estate of Attwood*, 276 Ark. 230, 633 S.W.2d 366 (1982). "[A] willful tort is beyond the scope of the parental immunity doctrine." *Id.* at 238, 633 S.W.2d at 370. The second exception applies "when a direct-action suit against a motor vehicle liability insurance carrier for uninsured motorist coverage is at issue and when insurance benefits are the damages requested." *Fields*, 350 Ark. at 88, 87 S.W.3d at 231. Here, we consider the scope of the second exception.

The *Fields* court gave multiple reasons for the exception. First, the court noted only nine states, including Arkansas, applied the parental-immunity doctrine when automobile insurance was the source of recovery. *Id.* at 84, 87 S.W.3d at 229. Second, the court decided the policy basis for the doctrine—family harmony—was inapplicable when "the insurance company is the true adversary." *Id.* at 86, 87 S.W.3d at 230. Third, the court thought any fraud or collusion between parent and child would be rare and could be countered during

litigation: "the judicial process and investigation by the carrier itself will stem the potential for abuse." *Id.* at 87, 87 S.W.3d at 230. Last, the court concluded the existence of criminal laws to punish the parent failed to justify the doctrine's application in this circumstance. *Id.* In all, the court reasoned, the policy underlying parental immunity was not "persuasive when the party with the true economic interest at stake is the liability carrier." *Id.* at 87, 87 S.W.3d at 231.

We find the basis for the *Fields* exception for uninsured coverage applies equally to the underinsured coverage. Accordingly, we hold an exception to the parental-immunity doctrine applies when a party files a direct-action suit against an insurance carrier for underinsured-motorist coverage and when insurance benefits are the damages requested. This appears to be the majority view according to the *Field* court's examination of the law. The insurance company can root out collusion and fraud during its investigation, during discovery, or in the courtroom. And the risk of fraud and collusion is practically nonexistent where, as here, the mother is deceased. *Cf. Attwood*, 276 Ark. at 236, 633 S.W.2d at 235 ("[T]he reasons which may have justified barring the child's remedy against a living parent lose much of their force when the parent child relationship is terminated by death.").

Further, we see no meaningful distinction between underinsured coverage and uninsured coverage for the purpose of parental immunity.[1] True, the two coverages have

_____

[1]The States with an automobile-negligence exception do not distinguish between underinsured coverage and uninsured coverage. *See, e.g.*, Conn. Gen. Stat. § 52-572c ("In all actions for negligence in the operation of a motor vehicle . . . the immunity between parent and child . . . is abrogated."); N.C. Gen. Stat. § 1-539.21 ("The relationship of a parent and child shall not bar the right of action . . . arising out of operation of a motor vehicle."); *Ard v. Ard*, 414 So. 2d 1066, 1067 (Fla. 1982) (waiving parental-immunity

different applications—uninsured coverage applies when the tortfeasor has no insurance while underinsured coverage applies when the tortfeasor's policy fails to fully compensate the injured party. *See Clampit v. State Farm Mut. Auto. Ins. Co.*, 309 Ark. 107, 109–10, 828 S.W.2d 593, 595 (1992). But this distinction does not affect the policy underlying the parental-immunity doctrine.

This does not mean we will always create exceptions. We have declined to do so in other cases. *See, e.g.*, *Greenwood v. Anderson*, 2009 Ark. 360, 324 S.W.3d 324 (upholding doctrine when son sued absentee father for negligence); *Robinson v. Robinson*, 323 Ark. 224, 914 S.W.2d 292 (1996) (upholding doctrine when daughter sued mother for negligently failing to prevent sexual abuse). We also upheld the doctrine when homeowner's insurance was the source of recovery. *Verdier v. Verdier*, 364 Ark. 287, 219 S.W.3d 143 (2005). There, a son sued his father for injuries arising out of a lawnmower accident, seeking recovery up to the limits of his father's homeowner's insurance policy. We rejected the son's request to create another exception. We noted many injuries occurred in the home and limiting the doctrine would lead to a slippery slope. But we also based our holding on the fact that the law requires auto insurance but not homeowner's insurance. Because "many households in Arkansas are not protected by homeowner's insurance," extending the doctrine could "create separate benefits and burdens for those who are insured than from those who are

_____

doctrine in negligence action "to the extent of the parent's available liability insurance coverage"); *Unah ex rel. Unah v. Martin*, 676 P.2d 1366, 1370 (Okla. 1984) (same); *Merrick v. Sutterlin*, 610 P.2d 891, 893 (Wash. 1980) (eliminating the doctrine for negligence actions against parent arising from automobile accident); *Lee v. Comer*, 224 S.E.2d 721, 725 (W. Va. 1976) (same); *Dellapenta v. Dellapenta*, 838 P.2d 1153, 1158 (Wyo. 1992) (permitting unemancipated minor to bring automobile-negligence action after identifying "at least thirty states that now recognize [the] action").

not." *Id.* at 291, 219 S.W.3d at 146.

As for future exceptions, we will carefully evaluate them as each case presents itself to the court.

Certified question answered.

*Reed Firm, P.A.*, by: *Tim Reed*, for petitioner.

*Turner Law Firm, P.A.*, by: *Andy L. Turner* and *Kaleb M. Jones*, for respondent.

*Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*, amicus curiae for Arkansas Trial Lawyers Association.