RAMBO v. RAMBO.

4-4988

Opinion delivered March 14, 1938.

*Daily & Woods,* for appellant.

*Partain & Agee,* for appellee.

McHANEY, J. Appellee, Billy Rambo, six years of age, brought this action by his mother and next friend against appellant, his father, to recover damages in the sum of $50,000 for personal injuries sustained by him through the alleged negligence of his father and of his agents, servants and employees. The complaint failed to allege the relationship existing between the parties. A motion of appellant to require this relationship to be alleged was overruled by the trial court. Thereupon, counsel for appellant filed a demurrer for him alleging that Billy Rambo is the minor son of appellant; that Faye Rambo, mother and next friend of Billy, is the wife of appellant; and that they all live together as one family, and that no cause of action exists in favor of appellee against appellant for the alleged tort, and that the complaint fails to state facts sufficient to constitute a cause of action. An answer was also filed denying the material allegations of the complaint. Counsel for appellee then filed an amendment to the complaint, admitting the relationship disclosed in the answer, and, in addition, alleging that appellant carried public liability insurance in the sum of $10,000, indemnifying him against loss by reason of injuries suffered by members of the public to that extent, and reduced the amount of the demand to that sum. Appellant moved to strike from said amendment all reference to the insurance carried by appellant. This motion was overruled, as was a general demurrer to the amendment, all over the objections and exceptions of appellant. Thereupon, an answer was filed to the amendment denying all the material allegations thereof. Trial resulted in a verdict and judgment against appellant for $10,000.

For the purpose of this decision, we assume that the negligence as alleged was established by the evidence. This leaves for consideration only questions of law, two in number. The first is whether an unemancipated minor child may maintain an action for damages against a parent, based on an involuntary tort, that is, an unintentional tort; and the second is whether the existence of a policy of liability insurance, protecting the parent from loss for injury to a member of the public, would save such an action otherwise not maintainable. We think both questions must be answered in the negative.

1. So far as we are advised by the diligence of counsel as reflected by the excellent briefs, and so far as our own investigation discloses, this court has never heretofore had the exact point for decision. A number of the courts of last resort in the United States have had this question for decision and they all hold, as stated in 46 C. J., p. 1324, that, "An unemancipated minor child has no right of action against a parent or a person standing *in loco parentis,* for the tort of such parent or person, unless a right of action is authorized by statute, although it has been held that the action may be maintained after emancipation of the child. Nor can the child, even after reaching majority, maintain an action for tort committed by the parent while the child was an unemancipated minor." The contrary doctrine is then stated that, "In some jurisdictions it has been held that a minor child may maintain an action against a step-parent, or a person *in loco parentis,* for malicious assault or cruel and unhuman treatment." A great many cases are cited by the author to support the text, many of which are cited by counsel for appellant.

One of such cases is *Matarese* v. *Matarese,* 47 R. I. 131, 131 Atl. 198, 42 A. L. R. 1360, wherein the reasons for the rule are stated as follows: "Anything that brings the child into conflict with the father or diminishes the father's authority or hampers him in its exercise is repugnant to the family establishment and is not to be countenanced save upon positive provisions of the statute law. Any proceeding tending to bring discord into the

family and disorganize its government may well be regarded as contrary to the common law, and not to be sanctioned by the courts. Such conflict would arise by recognizing the right of a minor child to bring his personal action against the father to recover damages for torts alleged to have been committed by the father in the course of the family relation, and resulting in personal injury to the child. The state by criminal proceedings will punish the father for the gross abuse of his power of control and discipline resulting in injury. For his continued abuse or neglect, indicating that the restraint arising from parental affection has failed, the state will remove the child from the father's control. It is, however, inconsistent with the family relation, while it exists, to permit the maintenance of such an action as that at bar of a minor child against his father to recover damages for the alleged negligence of the father."

The reasons for the rule are stated somewhat differently in *Wick* v. *Wick*, 192 Wis. 260, 212 N. W. 787, 52 A. L. R. 1113, as follows: "The family is a social unit. The members thereof are of the same blood. They are bound together by the strongest natural ties. Naturally, mutual love and affection obtain between the members thereof. There is mutual interest in one another's welfare. The family fireside is a place of repose and happiness. Society takes its caste from the character of its homes. It has a deep interest in maintaining in its integrity and stability the natural conception of the family unit. This imputes authority to the parent and requires obedience of the child. To question the authority of the parent or to encourage the disobedience of the child is to impair the peace and happiness of the family and undermine the wholesome influence of the home. To permit a child to maintain an action in tort against the parent is to introduce discord and contention where the laws of nature have established peace and obedience. Natural instinct condemns such proceedings as most unseemly, and the laws of society will not, to the detriment of society, defeat the benign influence of the laws of nature. That public policy which looks to the public welfare will not encourage discord and rebellion in the family unit, and thus de-

stroy that wholesome influence of the home in moulding the character of our future citizens. Generally speaking, filial affection is ample protection to the child from excessive punishment at the hands of the parent, but where the authority of the parent is abused in the way of excessive or brutal punishment a child will be protected through the criminal laws of the state. True, this does not redress the child for permanent injuries which thus may be inflicted. But it is deemed better public policy that occasional injuries of this kind go unrequited rather than encourage or tolerate proceedings so repugnant to natural sentiments concerning family relations.''

We think it unnecessary to cite or quote further from the cases listed in the note to the text above quoted in Corpus Juris, but deem it sufficient to say that the author cites cases from the following jurisdictions: Ill., Ind., Mich., Minn., Miss., N. J., N. Y., N. C., R. I., Tenn., Wash., and Wisconsin. In addition it may be said that Pennsylvania may also be included as the case of *Briggs* v. *City of Philadelphia*, 112 Pa. Super. 50, 170 Atl. 871, is to the same effect. Some of these cases base the rule on the fact that at common law no such action was maintainable, while others base it upon sound public policy. Appellee contends that the case of *Katzenberg* v. *Katzenberg*, 183 Ark. 626, 37 S. W. 2d 696, a suit by the wife against the husband, is authority for the contention that such a suit as the present one is not barred by public policy. It is true that that case upheld the right of a wife to sue her husband, but it did so upon the express ground that the Act of 1915, as amended by the Act of 1919, removed the disabilities of coverture theretofore existing against married women so as to permit the action. It was there said: ''If an inference could be drawn that, under the statute of 1915 and the rule announced in the Fitzpatrick case, *supra,* a married woman could not sue her husband for damages resulting from involuntary acts of negligence, certainly it cannot be said any statutory or common law restrictions prevent her from bringing such a suit after the amendatory act of 1919 emancipating a married woman from all disabilities was passed.'' There

is no statute in this state authorizing an unemancipated minor to maintain an action for an involuntary tort against the father, and, therefore, the Katzenberg case can have no application to this. Appellee also suggests that the action is maintainable under § 1273 of Pope's Digest. That section was § 59 of Chap. 4 of the Revised Statutes, and it deals with the subject of administration and survivorship and nothing else, and as said in *Davis* v. *Nichols*, 54 Ark. 358, 15 S. W. 880, referring to the cited section: "It does not, therefore, create a new cause of action or liability. It simply devolves an existing common law right or liability upon the administrator."

We, therefore, hold that an unemancipated minor may not maintain an action for an involuntary tort against his parent in this state. The converse of the proposition would likewise be true, that the parent might not maintain such an action against his infant child.

2. The next question is, whether the fact that appellant carried public liability insurance, authorized the maintenance of this action. In the first place, it may be said that the question of whether appellant had liability insurance had no proper place in this action, and the court should have granted appellant's motion to strike all mention of insurance held by him from the amendment to the complaint as well as to have excluded all proof regarding same offered in evidence. It has often been held that in a personal injury case, it is prejudicial error to permit counsel for plaintiff unnecessarily to advise the jury by questions or otherwise, of the fact that defendant carries indemnity insurance. It was so held in *Pekin Stave & Manufacturing Co.* v. *Ramey*, 104 Ark. 1, 147 S. W. 83, where it was said: "In an action by a servant against his master for damages growing out of a personal injury, it is improper for the jury to take into consideration the fact that the defendant is indemnified against accident to his employees. Evidence of such fact could throw no light upon the issue involved in the case, and would be wholly incompetent. 2 Labatt, Master & Servant, § 826." *Williams* v. *Cantwell*, 114 Ark. 542,

170 S. W. 250; *Cooper* v. *Kelly*, 131 Ark. 6, 198 S. W. 94. Many other cases might be cited to the same effect.

Another reason why the fact of liability insurance cannot be helpful to the appellee is the contract of indemnity itself. Clause 2 of the policy provides: "2. Indemnity. To pay, within the limits specified in Statement 3, the loss from the liability imposed by law upon the assured for damages (including consequential damages) on account of such injuries." As we have already shown, there is no liability imposed by law upon appellant for the injuries sustained by his infant son, and hence, if there is no liability imposed by law upon appellant, there could be no liability imposed upon the insurance company. In several of the cases cited to the text above quoted from Corpus Juris, it was held that the fact that the father was protected by liability insurance did not change the rule. In one of such cases, *Elias* v. *Collins*, 237 Mich. 175, 211 N. W. 88, 52 A. L. R. 1118, the court used this language:

"Plaintiff's counsel recognizes this as a rule of the common law, but he argues that modern business methods have so changed, with the coming of the automobile and the insurance thereon, that the common-law rule should be modified to allow minors to recover against their father for torts, inasmuch as insurance companies promise to reimburse the insured for any judgment gotten against him for injuries caused by the automobile. Perhaps there is a spice of good sense in this, but, if the rule is to fade away, because the reason is gone for its existence, what will we say as to boys who are injured while working on farms or in industrial plants, by reason of the negligence of their fathers? In these cases there is as much need of the common-law rule as there ever was. If this rule is to go out or be modified, we think it should be done by the Legislature rather than by us. By reason of this rule the trial court was right in directing a verdict as to Joseph Elias."

To the same effect is *Norfolk & S. Ry. Co.* v. *Gretakis*, 162 Va. 597, 174 S. E. 841, where it was said: "The fact that the father carried accident liability insurance does

not create any liability against the father which would not exist were he uninsured." See, also, *Bulloch* v. *Bulloch,* 45 Ga. App. 1, 163 S. E. 708, where the court said: "Moreover, the fact that the defendant father may have carried liability insurance upon his automobile would be irrelevant since liability must exist before such insurance would be applicable, and a policy of insurance could not establish that fact." See, also, *Segall* v. *Ohio Cas. Co.,* 224 Wis. 379, 272 N. W. 665, 110 A. L. R. 82. Appellee cites two cases which he contends support his theory of the question. They are *Dunlap* v. *Dunlap,* 84 N. H. 352, 150 Atl. 905, 71 A. L. R. 1055, and *Lusk* v. *Lusk,* 113 W. Va. 17, 166 S. E. 538. We think these cases are easily distinguishable from the case at bar, but even conceding that they are not, they are contrary to the great weight of authority in this country and we decline to follow them. Another clause worthy of notice contained in the policy of insurance is contained in (No. 3, Clause A), as follows: "The assured shall co-operate with the company, except in a pecuniary way, in the defense of claims and suits and in prosecuting appeals." It is difficult to perceive how this clause could be complied with by the assured without disturbing the family relationship which the policy of the law seeks to preserve. One of the arguments of appellee is that the fact of insurance, making it obligatory upon the insurance company to pay the judgment in this case, does away with the reason for the rule. But we cannot agree that such is the fact, both on account of the clause just quoted and because the coverage might not equal the amount of the judgment in all cases as it did in this, and only in this, presumably because of the amendment to the complaint. If appellant were solvent and had to pay a judgment in excess of the amount of the policy in the sum of $40,000, which was the amount first sued for in this case, it would be apparent that the reason for the rule had not been done away with.

The judgment will be reversed, and the cause dismissed.