BROWN, ADMINISTRATOR, *v.* COLE, ADMINISTRATOR.

4-5500                                    129 S. W. 2d 245

Opinion delivered May 29, 1939.

*E. Newton Ellis* and *Schoonover & Schoonover*, for appellant.

*A. J. Cole, Smith & Judkins, W. A. Jackson* and *O. C. Blackford,* for appellee.

HUMPHREYS, J. Sometime prior to the fall of 1930 John R. Kizer married a Mrs. Arnold, who was a widow at the time, and who was the mother of a boy child by her former husband. A short time after the marriage the mother of the boy died leaving as her only heir Bonner Arnold, who was then nine years of age.

His grandparents were living, and by and with their consent the boy was adopted by his stepfather on proper

petition in probate court of Randolph county, which order of adoption entered on October 1, 1930, recited that Bonner Arnold was nine years old, that both his parents were dead, that he was the owner of certain real estate consisting of blocks 9 and 10, Masonic Heights of the city of Pocahontas and the owner of 355 acres of land in said county, particularly describing same; that it was to the best interest of the child for said adoption to be granted and for the name of the child to be changed from Bonner Arnold to Bonner Kizer.

After the adoption the boy continued to reside with his stepfather or adoptive father. His grandparents died a short time after the adoption leaving as their sole surviving heir Bonner Kizer. Bonner continued to live in the home and under the care of the adoptive father until the 22d day of October, 1936, at which time he died of strychnine poisoning after suffering intense pain for several days.

John R. Kizer was suspected of having administered the poison to his adopted son and was charged with and arrested for murder. After the arrest of Kizer, A. J. Cole was duly appointed administrator of the estate of Bonner Kizer, deceased, and on October 28, 1936, brought this suit as such administrator in the circuit court of said county against John R. Kizer for damages for the pain and suffering endured by Bonner Kizer resulting from strychnine administered by John R. Kizer to Bonner Kizer. Service of the suit was obtained upon John R. Kizer and within a few weeks thereafter John R. Kizer committed suicide by taking strychnine.

The case was revived in the name of Ben A. Brown as administrator of the estate of John R. Kizer, deceased.

On August 29, 1938, appellant filed a motion to abate the cause of action, alleging that such cause of action did not survive the death of the alleged wrongdoer, John R. Kizer, which motion was overruled by the court over appellant's objection and exception.

A general demurrer was filed to the complaint and amendments thereto which was overruled by the court over appellant's objection and exception.

Appellant filed an answer denying the material allegations of the complaint and amendments thereto and the cause proceeded to trial upon the pleadings, testimony of witnesses introduced by the parties and instructions of the court, resulting in a verdict and judgment for $17,500 against the estate of John R. Kizer, from which is this appeal.

Appellant contends for a reversal of the judgment for the following reasons:

First. That it is a cause of action for wrongful death, which abated on the death of the alleged wrongdoer.

Second. That the cause of action involves an unemancipated minor child suing his father in tort and that such action is not maintainable.

Third. That there is no substantial evidence upon which the jury might properly base a verdict, and a verdict, therefore, should have been directed for appellant.

(1) Appellant argues that the cause of action is based upon §§ 1277 and 1278 of Pope's Digest for the wrongful death of Bonner Kizer, which action abates with the death of the wrongdoer. Appellee concedes that if this action was one for the wrongful death of Bonner Kizer based upon said sections of Pope's Digest the action would abate, but asserts that under the allegations of the complaint it was an action based upon § 1273 of Pope's Digest which is as follows: "For wrongs done to the person or property of another, an action may be maintained against the wrong-doers, and such action may be brought by the person injured, or, after his death, by his executor or administrator against such wrong-doer, or, after his death, against his executor or administrator, in the same manner and with like effect in all respects as actions founded on contracts."

It is true that the complaint alleges that Bonner Kizer died as a result of the poisoning, but this was in the nature of an allegation by way of inducement and the gist or real allegation for which damages were claimed is as follows: The complaint alleges that the deceased "suffered untold excruciating pain and agony for several days prior to his death; that the said deceased could have,

had he survived, sued for and recovered for said pain and suffering which is now recoverable by his personal representative herein, which pain and suffering appellant is entitled to the sum of $30,000 actual damages.''

Therefore, this is not a suit for ''wrongful death'' which would abate, but is one for injury resulting in pain and suffering, which does survive.

The court was correct in overruling the motion to abate the cause of action.

(2) It is true that this court, in the case of *Rambo v. Rambo,* 195 Ark. 832, 114 S. W. 2d 468, announced the following rule: ''We, therefore, hold that an unemancipated minor may not maintain an action for an involuntary tort against his parent in this state. The converse of the proposition would likewise be true, that the parent might not maintain such an action against his infant child.''

The reason for announcing this rule was that such suits would disturb the relationships of the family as a social unit as the members thereof are bound by the same blood and natural ties of affection.

In the Rambo Case, *supra,* the suit was brought by the mother on behalf of Billy Rambo against his own father for personal injuries sustained by him through the alleged negligence of his father. There was a blood relationship between Billy and his father. In the instant case John R. Kizer was an adoptive father and Bonner Kizer was his adopted son. There was no blood relationship between them. No natural ties of affection existed between them. We are not willing to extend the doctrine announced in the Rambo Case, *supra,* so as to prevent an adopted child from bringing suit against his adoptive father for a voluntary tort committed upon him by the adoptive father.

It is true we have a statute investing adopting parents with every legal right in respect to obedience on the part of an adopted child and investing the adopted child with the legal rights, privileges, obligations and relations with respect to education, maintenance and the right to inheritance which is as follows:

"The adopting parents shall be invested with every legal right in respect to obedience on the part of the child as if the child had been born to them in legal wedlock.

"The child shall be invested with every legal right, privilege, obligation and relation in respect to education, maintenance and the rights of inheritance to real estate or the distribution of personal estate on the death of the adopting parents, as if born to them in legal wedlock.

"Nothing in this act shall be construed as debarring a legally adopted child from inheriting property from its natural parents or other kin. See the second and third sub-divisions of § 262 of Pope's Digest."

It will be observed that in these statutes no attempt is made to invest either the child or the adopting parents with natural affections existing between blood relations, so the reason for the rule that prevents natural children from suing natural parents for voluntary torts committed upon them does not exist between adopted children and adoptive parents. We, therefore, hold that an adopted child may sue an adoptive father for torts committed upon it which cause him suffering and pain.

(3) We think there is substantial testimony in the record tending to show that John R. Kizer administered strychnine poison to Bonner Kizer which caused him to suffer very great and excruciating pain for several days before Bonner Kizer died from the effects thereof. The testimony shows that John R. Kizer purchased at least two bottles and maybe more of strychnine poison from Rector Johnson, a druggist at the time he claimed to be treating Bonner Kizer for malaria and that he bought some large capsules also and attempted to buy magnesia powder. He took Bonner Kizer to Dr. H. H. Price, who was a chiropractor, for treatment and was advised by the chiropractor that he should employ a physician to administer to the boy. Dr. Price testified that the boy was suffering excruciating pain and needed medical attention. John R. Kizer did not call in any other physician, but continued to treat the boy himself for malaria. Immediately after the boy's death two bottles with the labels

burned off were found in the stove which had coals of fire in it and which had burned off the labels. The bottles were taken to the druggist, Rector Johnson, and he identified them as bottles which contained the strychnine he had sold John R. Kizer. Dr. Price testified that when the boy was in his office he was suffering intense pain, that his expression showed it, that his heart beat showed it and of all the patients he had ever had only a few had suffered such pain as was manifested by the boy. The boy expressed a doubt as to whether he should continue to take the treatment which his father was administering to him and asked the advice of Dr. Price as to whether he should continue taking it and was advised that perhaps it would be best to leave it off.

After the boy's death an autopsy and chemical analysis of his body showed that he had died from strychnine poisoning.

When an officer notified John R. Kizer that the bottles had been discovered in the stove he became very excited and protested his innocence of having administered poison to his stepson, but within a month after he had been arrested he committed suicide by taking strychnine himself. We think the evidence was ample and sufficient to warrant the jury in concluding that the strychnine poison which was found in the body of Bonner Kizer had been administered to him from time to time so as to bring about his slow death and that during the time it was being administered to him Bonner Kizer had suffered excruciating pain for at least several days.

No prejudice resulted to appellant on account of the instructions given by the court. The court instructed the jury that pain and suffering was the only element of damages in the case for which a recovery might be had. They could not have been misled by the instructions to believe that they would be warranted in returning a verdict for the death of Bonner Kizer instead of for the intense and excruciating pain he suffered.

No error appearing, the judgment is affirmed.

McHANEY and BAKER, JJ., dissent on the ground that an adopted minor child may not maintain a tort action against the adoptive parent.