Christopher THOMAS, Next Friend of Bradley
Davis INMON, a Minor *v.* Frank D.
INMON and Catherine INMON

79-339                                            594 S.W. 2d 853
Supreme Court of Arkansas
Opinion delivered March 10, 1980

*Spitzberg, Mitchell & Gill,* by: *Brent Bumpers,* for appellant.

*Friday, Eldredge & Clark,* by: *Donald H. Bacon,* for appellees.

JOHN F. STROUD, Justice. This is a suit to determine if the family immunity doctrine should bar recovery by an unemancipated minor from one standing *in loco parentis* for injuries resulting from an unintentional tort. The trial court

granted a motion for summary judgment, and we agree that the action cannot be maintained in Arkansas.

On August 7, 1974, Bradley Davis Inmon, at that time two and one-half years of age, was injured while playing in a storage room at the residence of the appellees, his maternal grandparents. Bradley was burned while playing with a gasoline can that exploded and caught fire, necessitating skin grafts and other medical treatments. Bradley, by his next friend, Christopher Thomas, brought suit against appellees for negligence, seeking $25,000 in damages. Appellees had permanent custody of the minor by court decree and were in the process of adopting him. At some point after the accident, the adoption proceedings were completed. Appellees raised the family immunity doctrine as a bar to the action and moved for summary judgment. The motion was granted by the trial court on April 30, 1979, and from that order appellant brings this appeal.

The sole issue presented here is whether an unemancipated minor may maintain a cause of action for negligence against a person or persons standing *in loco parentis,* in this case the maternal grandparents. The parties offer only two Arkansas cases as authority in this matter, and we find no others, *Rambo* v. *Rambo,* 195 Ark. 832, 114 S.W. 2d 468 (1938), and *Brown* v. *Cole,* 198 Ark. 417, 129 S.W. 2d 245 (1939).

In *Brown* a young boy was adopted by his stepfather. Several years later, when the boy was 15 years of age, his adoptive father intentionally administered strychnine poison to him, resulting in his death. The court acknowledged the family immunity doctrine established the previous year in *Rambo* and commented:

> We are not willing to extend the doctrine announced in the *Rambo* case, supra, so as to prevent an adopted child from bringing suit against his adoptive father for a voluntary tort committed upon him by the adoptive father.

We need not address now the issue of an adoptive

parent, as Bradley Davis Inmon was not adopted by appellees until after the tort occurred in the case now on appeal. However, we easily distinguish the *Brown* case, as the suit there was for an *intentional* tort.

The *Rambo* case was a suit by a six year old boy, acting by his mother and next friend, against his natural father, alleging negligence and seeking to recover damages for personal injuries. The court in establishing the family immunity doctrine in Arkansas stated:

> We, therefore, hold that an unemanicipated minor may not maintain an action for an involuntary tort against his parent in this state.

In *Rambo, supra,* at 834, 114 S.W. at 469, the court also quoted with approval 46 C.J., p. 1324, which states:

> An unemancipated minor child has no right of action against a parent or a person standing *in loco parentis,* for the tort of such parent or person, . . .

We are not persuaded by appellant's contentions that the family immunity doctrine has become a legal anachronism. Nor do we believe that the policy considerations of family harmony and prevention of collusion and fraud are no longer valid. Although more than 40 years have elapsed since *Rambo,* we still believe in the sanctity of the family unit and find the statement of the court then is still valid today:

> But it is deemed better public policy that occasional injuries of this kind go unrequited rather than encourage or tolerate proceedings so repugnant to natural sentiments concerning family relations.

For these reasons, we adhere to the family immunity doctrine and extend the holding in *Rambo* to apply to persons *in loco parentis* as well as to natural parents.

Affirmed.

Mays, J., dissents.

Richard L. Mays, Justice, dissenting. Formulated by the Mississippi Supreme Court less than 90 years ago, the doctrine of parental immunity for personal torts is an exception to the well established rule of liability for breach of the duty of ordinary care for the safety of others. *Hewlett* v. *George,* 68 Miss. 703, 9 So. 885 (1891). As with most exceptions to important legal principles, the burden of persuasion should be shouldered by those pressing the case. Traditionally, those justifying the abolition of the right of a minor child to enforce the duty of ordinary care against a parent by suing for damages have relied upon two considerations:

(1) disruption of family harmony

(2) fraud or collusion between family "adversaries"

Unlike the majority of the court today, I am not persuaded that these policy considerations adequately underpin the doctrine of parental immunity and, therefore, would abolish the doctrine.

Although a tort action by a child against his parent may suggest family disharmony, generally the real party in interest is the insurance company which provides financial protection to the parent. Just as most tort suits are not undertaken in the absence of a deep pocket, few minor children would sue their parents in the absence of insurance. Moreover, no greater disruption of family harmony is caused by a suit pitting a child against a parent than a suit pitting brother against sister or husband against wife which is allowed. *Leach* v. *Leach,* 227 Ark. 559, 300 S.W. 2d 15 (1957). As to the consideration of fraud or collusion, no greater danger of collusion exists in child-parent suits than in other suits among family members. Although the possibility of fraud or perjury exists to some degree in all cases, we do not abolish a cause of action solely because of that danger. In short, the likelihood of family discord or collusive suits is not significantly enhanced by permitting child-parent suits and certainly does not justify abolishing an unemancipated

child's right to be made financially whole when wrongfully injured.

I do not deny that a suit between a parent and child, or for that matter between any family members, may be repugnant to natural sentiments. Not only is a parent-child relationship uniquely underpinned with strong emotional ties, but it is accented with an obligation to support and a special need for parental authority and discipline. The uniqueness of the relationship, however, should not provide a privilege for negligent conduct or insulate the conduct of the parent from reasonable judicial scrutiny. Such scrutiny has not destroyed the relationship in the 25 other jurisdictions which permit child-parent suits. See, e.g., *Smith* v. *Kaufman*, 212 Va. 181, 183 S.E. 2d 190 (Va. 1971). After all, the injury to the child is no less severe when caused by a parent than a stranger.

The judgment should be reversed and the cause remanded.