Carey CARPENTER, Individually and on Behalf of the Minor Children Richard Carey CARPENTER, et al., and as Father and Next Friend *v.* Don BISHOP, Special Administrator of the Estate of Sheryl Andrei CARPENTER, Deceased

86-103                                              720 S.W.2d 299

Supreme Court of Arkansas
Opinion delivered December 8, 1986

*Howell, Price, Trice, Basham & Hope, P.A.*, by: *Dale Price*, for appellant.

*Davis, Cox & Wright*, by: *Constance G. Clark*, for appellee.

ROBERT H. DUDLEY, Justice. The primary issue in this case is whether a viable fetus born dead has a cause of action against a mother who negligently caused the death of the fetus. The trial judge granted a judgment on the pleadings. ARCP Rule 12(c). We affirm.

Because of the procedure below, we take the factual allegations of the complaint as true. Those facts are that the mother, Sheryl Carpenter, was eight and one-half months pregnant when she negligently drove an automobile into a bridge abutment, killing herself and the viable fetus. Carey Carpenter, as father and next friend, filed suit for the dead fetus against the mother. He also filed a derivative suit in his own capacity and on behalf of siblings. Because this action is barred by the parental immunity doctrine, we need not decide whether a viable fetus born dead is a "person" who has a cause of action under the wrongful death statute, Ark. Stat. Ann. §§ 27-906 to 27-910 (Repl. 1979).

Our first case involving the doctrine of parental immunity was *Rambo v. Rambo*, 195 Ark. 832, 114 S.W.2d 468 (1938), in which a six year old boy, through his mother and next friend, filed a suit against his father for an unintentional injury. We held that an unemancipated minor did not have a cause of action against a parent for an unintentional tort.

We next considered the doctrine concerning an unintentional tort in the case of *Thomas* v. *Inmon*, 268 Ark. 221, 594 S.W.2d 853 (1980), a suit by a two and one-half year old boy against his maternal grandparents. We reaffirmed the doctrine with respect to unintentional torts and extended it to people acting in the place of parents.

In *Brown* v. *Cole*, 198 Ark. 417, 129 S.W.2d 245 (1939), we held that the doctrine would not protect an adoptive father who intentionally poisoned his adoptive son. In *Attwood* v. *Attwood*, 276 Ark. 230, 633 S.W.2d 366 (1982), a father intentionally got drunk and willfully drove his car at such a rate of speed that he lost control and wrecked the car, causing injury to his child. We held that such intentional and willful conduct fit into an exception to the parental immunity doctrine for the reason that a parent who intentionally and willfully injures his child has abdicated his parental responsibilities and is not entitled to an immunity which has as its purpose the encouragement of those responsibilities.

In summation, a parent or a person acting in the place of a parent is immune from suit for an unintentional injury to his child, but the parental immunity doctrine does not protect a parent from liability for an intentional or willful injury to his child. In the case at bar the suit by the dead fetus was for an unintentional injury, or simple negligence, and the mother's estate is immune from the suit by the fetus regardless of whether the fetus is a "person" as defined by the wrongful death statute.

Appellant alternatively argues that even if the claim of the fetus against the mother is barred by the parental immunity doctrine, the claims of the father and siblings are not barred. That argument is also without merit.

The actions by the fetus and children under the wrongful death statute, Ark. Stat. Ann. § 27-906 (Repl. 1979), are derivative claims or claims derived from the death of the fetus. Because the claim of the fetus against the mother is barred, so are the derivative claims.

Affirmed.

GEORGE ROSE SMITH, J., concurs.

GEORGE ROSE SMITH, Justice, concurring. The doctrine of

parental immunity still governs in Arkansas negligence law, but it takes little prophetic ability to realize that the doctrine's life expectancy is short. The second edition of the Restatement of Torts broadly rejects the doctrine, with some exceptions. Restatement, Torts (2d), § 895G (1979). Prosser & Keaton's newest revision of Torts shows that in a rapid sequence of developments beginning in 1963, the doctrine has been rejected, also with exceptions, in more than half the states. Section 122 (5th ed. 1984).

One exception to a complete rejection of parental immunity is stated in the Restatement, Section 895G, Comment *k*:

> Just as the parent-child relationship creates an analogy to consent in the case of an intentional tort, so in the case of a negligent tort there is an analogy to the defense of assumption of risk. For activities central to that relationship, particularly within the home itself, there is some relaxation of the stricter standard of conduct applied in dealing with third persons. A child thoughtlessly leaves his skates in a hallway and the parent trips over them or slides on them and falls, or a parent delays fixing a slightly broken step or calling a carpenter to do it and the child falls as a result; these occurrences are normally regarded as commonplace incidents in family life and usually treated as accidents rather than the basis for imposing legal liability.

I think that reasoning applies to this case. As Justice Holmes said in what was for many years the landmark case on the unborn child's cause of action, "the unborn child was a part of the mother at the time of the injury." *Dietrich* v. *Northampton*, 138 Mass. 14, 52 Am. Rep. 242 (1884). In our case the unborn child was still in fact completely dependent upon the mother when the accident occurred. Her own instinct for self-preservation protected the child better than anything else could possibly have done, so that the analogy of assumed risk is appropriate.

Moreover, in all probability the surviving husband and children have inherited all the property that Mrs. Carpenter may have had. The survivors' grief for the loss of wife and mother must have been overwhelming. For them to come into a court of law and seek compensation, doubtless from an insurance company, on

the theory that the mother's negligence somehow violated a duty she owed to them is repugnant to one's sensibilities. I do not believe that the law should countenance a cause of action as ignoble as this one seems to me to be.