Freddie Mark FIELDS, as Parent and Next Friend of Stephen Hunter Fields, *a Minor v.* SOUTHERN FARM BUREAU CASUALTY INSURANCE COMPANY

02-121                                          87 S.W.3d 224

Supreme Court of Arkansas
Opinion delivered September 19, 2002

*Laws & Murdoch, P.A.*, by: *Hugh R. Laws*, for appellant.

*Hardin, Jesson & Terry, PLC*, by: *J. Rodney Mills* and *J. Gregory Magness*, for appellee.

ROBERT L. BROWN, Justice. This is an appeal by appellant Freddie Mark Fields (Fields), as parent and next friend of Stephen Hunter Fields, a minor (Hunter), from an order of summary judgment granted in favor of appellee Southern Farm Bureau Casualty Insurance Company (Southern Farm). Fields urges that this court should abrogate the parental-immunity doctrine altogether or, alternatively, create an exception to the doctrine where the motor vehicle accident is covered by liability insurance. We agree that a new exception to the parental-immunity doctrine is warranted under the facts of this case, and we reverse the order of summary judgment and remand the case for further proceedings.

This is a direct-action lawsuit brought by Fields against Southern Farm for payment of benefits under the uninsured motorist provision of Fields's motor vehicle liability insurance policy. The dispute centers on the injuries to Hunter. Hunter's mother, Cheryl D. Fields (Cheryl), and Fields had been married and were divorced in April 1996. Following the divorce, the parents had joint custody of Hunter at all times relevant to this case.

On January 10, 1997, Hunter was riding in an automobile with his mother when they were injured in a single-car accident. According to the motor vehicle accident report, Cheryl lost control of her 1990 Ford Van during heavy snowfall while traveling westbound on Interstate 40 just outside of Russellville. Her van

spun counter-clockwise once, went off the road and into the median, and tumbled down a steep embankment, rolling three times before coming to rest.

According to the complaint, Hunter was thrown from the vehicle and severely injured. He suffered a broken right femur and numerous bruises and contusions over his entire body. As a result of the accident, he now suffers from "residual leg length discrepancy," which presumably means that his right leg after the accident was shorter than his left leg. He suffered extreme pain throughout his recovery, according to the complaint, including nightmares and restlessness.

It is undisputed that Cheryl was driving her van negligently at the time of her accident. Also, when the accident occurred, she had no liability insurance on her van. Fields had a motor vehicle insurance policy with Southern Farm, which included a standard uninsured motorist coverage endorsement, with bodily injury limits of $25,000 per person and a medical benefit of $5,000. The endorsement included coverage for members of Fields's family residing in his household, which meant that Hunter was covered. On June 7, 2001, Fields sued Southern Farm in a direct action for uninsured motorist coverage for Hunter's injuries, which resulted from Cheryl's negligent driving. He prayed for damages of $30,000 for his medical injuries and for pain and suffering. As Exhibit A to his complaint, Fields attached Southern Farm's uninsured motorist endorsement to his automobile liability insurance policy. Southern Farm answered and denied liability. The insurer then moved for summary judgment based on the parental-immunity doctrine. The insurer contended in its supporting brief that because Hunter was not "legally entitled to collect" damages from his mother, the uninsured driver, Southern Farm was not obligated to pay under the policy. On January 10, 2002, the trial court entered an order granting summary judgment to Southern Farm based on parental immunity.

## I.  Parental Immunity

Fields now appeals on behalf of Hunter and argues that the parental-immunity doctrine should be abrogated *in toto* or

rendered inapplicable to direct–action lawsuits where motor vehicle liability coverage provides uninsured motorist benefits to a child for the negligent acts of a parent. We begin our analysis by referencing the appropriate standard of review to be applied for an appeal from an order of summary judgment:

> We have repeatedly held that summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *George v. Jefferson Hosp. Ass'n, Inc.,* 337 Ark. 206, 987 S.W.2d 710 (1999); *Pugh v. Griggs,* 327 Ark. 577, 940 S.W.2d 445 (1997). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of its motion leave a material fact unanswered. *Id.* This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Adams v. Arthur,* 333 Ark. 53, 969 S.W.2d 598 (1998); *Pugh,* 327 Ark. 577, 940 S.W.2d 445. Our review is not limited to the pleadings, as we also focus on the affidavits and other documents filed by the parties. *Wallace v. Broyles,* 331 Ark. 58, 961 S.W.2d 712 (1998); *Angle v. Alexander,* 328 Ark. 714, 945 S.W.2d 933 (1997). After reviewing undisputed facts, summary judgment should be denied if, under the evidence, reasonable men might reach different conclusions from those undisputed facts. *George,* 337 Ark. 206, 987 S.W.2d 710.

*Worth v. City of Rogers,* 341 Ark. 12, 20, 14 S.W.3d 471, 475 (2000). *See also* Ark. R. Civ. P. 56(c)(2).

Both parties agree that under current law, Hunter's complaint would be barred because Cheryl negligently caused his injuries, and the parental-immunity doctrine bars suits by children for the negligence of their parents. Nevertheless, in 1999, this court stated that it planned to reexamine the parental-immunity doctrine, when the issue was appropriately developed. *Spears v. Spears,* 339 Ark. 162, 3 S.W.3d 691 (1999). Fields argues that in *Spears,* this court refused to entertain an argument to abolish the

parental-immunity doctrine only because the appellant had failed to present an adequate argument on appeal. We did note in *Spears* that the appellant argued "in conclusory fashion, that thirty states have allowed suits against parents involving automobile accidents but cites no caselaw to support the conclusion and otherwise provides us with a paucity of cases to warrant changing our common law." *Spears*, 339 Ark. at 165-166, 3 S.W.3d at 693-694. Noting that "[w]e do not overrule our common law cavalierly or without giving considerable thought to the change," this court refused to consider the appellant's argument to do away with parental immunity. *Id.* at 166, 3 S.W.3d at 693-694. Finally, we observed in *Spears* that the appellant had failed to plead insurance coverage in the trial court which rendered this court unable to consider the issue on an appeal from a judgment on the pleadings. *Id.*

Fields now urges that he has met the standard we set out in *Spears* by specifically pleading liability insurance and by bolstering his argument with supporting authorities. Specifically, he points to the decline of the parental-immunity doctrine throughout the country and cites us to case authority from a variety of jurisdictions. He further emphasizes that the Restatement (Second) of Torts § 895G supports the complete abrogation of the doctrine, and he argues that the policies underlying the doctrine — family harmony, maintenence of parental discipline, the potential for fraud, and the adequacy of criminal sanctions to punish child abuse — are no longer sufficient to support the doctrine.

Southern Farm counters these assertions with three principal arguments: (1) the doctrine of *stare decisis* requires adherence to the parental-immunity doctrine; (2) the public policies underlying the parental-immunity doctrine are still as valid as they were in 1891 when the doctrine had its genesis in Mississippi;[1] and (3) the sepa-

---

[1] The doctrine of parental immunity originated with the 1891 Mississippi Supreme court decision of *Hewlett v. George*, 68 Miss. 703, 9 So. 885 (1891) (*overruled by Glaskox v. Glaskox*, 614 So. 2d 906 (Miss. 1992)). In *Hewlett*, a daughter brought suit against her mother for false imprisonment, alleging that she had been confined without cause to a mental hospital for eleven days. *Hewlett*, 68 Miss. at 711, 9 So. at 887. The court, without citing to legal authority, created the rule and announced the policy underlying it:

> [S]o long as the parent is under obligation to care for, guide, and control, and the child is under reciprocal obligation to aid and comfort and obey, no such action as

ration of powers dictates that this court defer to the General Assembly in fashioning exceptions or abolishing a doctrine that has been a part of Arkansas common law for over sixty years.

■ The parental-immunity doctrine was created judicially in this state in the case of *Rambo v. Rambo*, 195 Ark. 832, 114 S.W.2d 468 (1938). In that case, we held that "an unemancipated minor may not maintain an action for an involuntary tort against his parent in this state." *Id.* at 837, 114 S.W.2d at 470. The policy reasons cited by this court in support of the doctrine were the State's interest in maintaining family peace and harmony, the adequacy of criminal sanctions to punish child abuse, and the upholding of parental authority. *Id.* at 834–836, 114 S.W.2d at 469–470. This court further underscored the lack of statutory authority for an unemancipated minor to maintain an action for an involuntary tort against a parent. *Id.* at 836–837, 114 S.W.2d at 470. The fact that the parent carried liability coverage was not sufficient reason to refuse to adopt the rule, according to the *Rambo* court.

A year after handing down *Rambo*, this court refused to apply the parental-immunity doctrine to a case where an adoptive father poisoned his adopted son. *Brown v. Cole*, 198 Ark. 417, 420, 129 S.W.2d 245, 247 (1939) ("[w]e are not willing to extend the doctrine [of parental immunity] so as to prevent an adopted child from bringing suit against his adoptive father for a voluntary tort committed upon him by his adoptive father."). The Court explained that the reason for adopting the parental-immunity doctrine was to prevent strife among family members, who were "bound by the same blood and natural ties of affection." *Id.* at 420, 129 S.W.2d at 247. This court reasoned that the lack of blood ties between the adoptive father and adoptive son and the fact that the son was subjected to a voluntary tort rather than an

---

this can be maintained. The peace of society, and of the families composing society, and a sound public policy, designed to subserve the repose of families and the best assertion of a claim to civil redress for personal injuries suffered at the hands of the parent. The state, through its criminal laws, will give the minor child protection from parental violence and wrong-doing, and this is all the child can be heard to demand.

*Id.*

involuntary tort distinguished the case from *Rambo*. *Id*. at 421, 129 S.W.2d at 248.

In 1980, we extended the doctrine to persons standing *in loco parentis* to an unemancipated minor for liability for an involuntary tort committed against that minor. *Thomas v. Inmon*, 268 Ark. 221, 594 S.W.2d 853 (1980). In *Inmon*, we said: "We are not persuaded by appellant's contentions that the family immunity doctrine has become a legal anachronism. Nor do we believe that the policy considerations of family harmony and prevention of collusion and fraud are no longer valid." *Id*. at 223, 594 S.W.2d at 854.

In 1982, this Court held that the parental-immunity doctrine did not apply to a case where a father became willfully and intentionally intoxicated and then drove a vehicle while intoxicated with his child as a passenger and injured that child. *Atwood v. Atwood's Estate*, 276 Ark. 230, 633 S.W.2d 366 (1982). We refused to apply the doctrine to those facts, and held that "it is clear that a willful tort is beyond the scope of the parental-immunity doctrine as it is applied in Arkansas." *Id*. at 238, 633 S.W.2d at 370.

In 1986, this court held that a parent or person acting *in loco parentis* is immune from suit for an *unintentional* injury to his child but not for an *intentional* injury to that child. *Carpenter v. Bishop*, 290 Ark. 424, 720 S.W.2d 299 (1986). In *Carpenter*, the issue was whether a viable fetus born dead as a result of a mother's negligence has a cause of action against the mother. We reviewed our prior parental immunity decisions and summarized the doctrine:

> [A] parent or person acting in the place of a parent is immune from suit for unintentional injury to his child, but the parental immunity doctrine does not protect a parent for liability for an intentional or willful injury to his child.

*Id*. at 426, 720 S.W.2d at 300. Justice George Rose Smith concurred in *Carpenter*. He first stated that the Restatement (Second) of Torts, § 895G, rejects the parental-immunity doctrine and then said that "[t]he doctrine of parental immunity still governs in Arkansas negligence law, but it takes little prophetic ability to realize that the doctrine's life expectancy is short." *Id*. at 426-27, 720

S.W.2d at 300 (Smith, J., concurring). Justice Smith, in predicting the eventual downfall of the doctrine, was careful to state his reservation that the doctrine should not be completely abolished, and that in situations where there would be an analogy to the assumption of the risk — for common hazards that all families face and create for each other — parents would not be liable. *Id.* at 427, 720 S.W.2d at 301 (Smith, J., concurring).

In 1996, this court again declined to create an exception to the parental-immunity doctrine for negligent conduct. *Robinson v. Robinson*, 323 Ark. 224, 914 S.W.2d 292 (1996). In *Robinson*, a daughter sued her mother for negligently failing to prevent her father from sexual abusing her as a child. *Id.* at 227, 914 S.W.2d at 293. We bowed to precedent and acknowledged that the parental-immunity doctrine should not apply to voluntary torts, such as the tort for sexual abuse against her father, but should apply to involuntary torts such as the negligence of her mother. We said: "[t]he parental-immunity doctrine is the law in this jurisdiction," and held that "the doctrine is applicable . . . where, although appellee had attained her legal age when this action was commenced, she was an unemancipated minor at the time of the alleged tort." *Id.* at 227, 914 S.W.2d at 294.[2]

In examining the current status of the parental-immunity doctrine in our sister states, we find that nine states, including Arkansas, continue to apply parental immunity to cases where automobile liability insurance coverage represents the source of funds for recovery. *See* La. Rev. Stat. § 9:571 (West 1997); *Renko v. Renko*, 346 Md. 464, 697 A.2d 468 (1997); *Terror Mining Co. v. Roter*, 866 P.2d 929 (Colo. 1994); *Mitchell v. Davis*, 598 So.2d 801 (Ala. 1992); *Mohorn v. Ross*, 205 Ga. App. 443, 422 S.E.2d 290 (1992); *Robinson v. Robinson*, 323 Ark. 224, 914 S.W.2d 292 (1990); *Vaughn v. Vaughn*, 161 Ind. App. 497, 316 N.E.2d 455 (1974); *Campbell v. Gruttemeyer*, 432 S.W.2d 894 (Tenn. 1968); *Pullen v. Novak*, 169 Neb. 211, 99 N.W.2d 16 (1959).

---

[2] Consistent with *Rambo*, this court in *Robinson* permitted the plaintiff's suit against her father for "willful, intentional, and malicious acts" of childhood sexual abuse to go forward in a new trial. *See Robinson*, 323 Ark. 224, 914 S.W.2d 292 (1996).

However, eleven states have abrogated the doctrine altogether. *See Broadbent v. Broadbent*, 184 Ariz. 74, 907 P.2d 43 (1995); *Hartman v. Hartman*, 821 S.W.2d 852 (Mo. 1991); *Kirchner v. Crystal*, 15 Ohio St. 3d 326, 474 N.E.2d 275 (1984); *Winn v. Gilroy*, 296 Or. 718, 681 P.2d 776 (1984); *Guess v. Gulf Ins. Co.*, 96 N.M. 27, 627 P.2d 869 (1981); *Anderson v. Stream*, 295 N.W.2d 595 (Minn. 1980); *Elam v. Elam*, 275 S.C. 132, 268 S.E.2d 109 (1980); *Holodook v. Spencer*, 36 N.Y.2d 35, 324 N.E.2d 338, 364 N.Y.S.2d 859 (1974); *Gibson v. Gibson*, 3 Cal.3d 914, 479 P.2d 648 (1971); *Falco v. Pados*, 444 Pa. 372, 282 A.2d 351 (1971); *Nuelle v. Wells*, 154 N.W.2d 364 (N.D. 1967).

In four states and the District of Columbia, the doctrine was never adopted. *See Rousey v. Rousey*, 528 A.2d 416 (D.C. 1987); *Elkington v. Foust*, 618 P.2d 37 (Utah 1980); *Wood v. Wood*, 135 Vt. 119, 370 A.2d 191 (1977); *Rupert v. Stienne*, 90 Nev. 397, 528 P.2d 1013 (1974); *Petersen v. City and County of Honolulu*, 51 Haw. 484, 462 P.2d 1007 (1969). In South Dakota, adoption of the doctrine has never been addressed, while in Idaho, adoption of the doctrine is unclear. *See Pedigo v. Rowley*, 101 Idaho 201, 610 P.2d 560 (1980).

Twenty-one states have abrogated the doctrine for the negligent operation of a motor vehicle where liability insurance is involved. Conn. Gen. Stat. § 52-572c (1985); N.C. Stat. Ann. § 1-539.21 (1983); *Glaskox v. Glaskox*, 614 So.2d 906 (Miss. 1992); *Wright v. Wright*, 134 Mich. App. 800, 351 N.W.2d 868 (1984); *Unah By & Through Unah v. Martin*, 676 P.2d 1366 (Okla. 1984); *Transamerica Ins. Co. v. Royle*, 202 Mont. 173, 656 P.2d 820 (1983); *Foldi v. Jeffries*, 93 N.J. 533, 461 A.2d 1145 (1983); *Allstate Ins. Co. v. Wyoming Dept. of Ins.*, 672 P.2d 810 (Wy. 1983); *Ard. v. Ard.*, 414 So.2d 1066 (Fla. 1982); *Larson v. Buschkamp*, 105 Ill. App.3d 965, 435 N.E.2d 221 (R.I. 1982); *Silva v. Silva*, 446 A.2d 1013 (1982); *Turner v. Turner*, 304 N.W.2d 786 (Iowa 1981); *Nocktonick v. Nocktonick*, 227 Kan. 758, 611 P.2d 135 (1980); *Merrick v. Sutterlin*, 93 Wash.2d 411, 610 P.2d 891 (1980); *Black v. Solnitz*, 409 A.2d 634 (Me. 1979); *Williams v. Williams*, 369 A.2d 669 (Del. 1976); *Lee v. Comer*, 159 W.Va. 585, 224 S.E.2d 721 (1976); *Sorensen v. Sorensen*, 369 Mass. 350, 339 N.E.2d 907 (1975); *Wright v. Wright*, 213 Va. 177, 191 S.E.2d 223 (1972);

*Hebel v. Hebel*, 435 P.2d 8, (Alaska 1967); *Briere v. Briere*, 107 N.H. 432, 224 A.2d 588 (1966).

Three remaining states espouse other tests for deciding liability where automobile negligence is involved. *See Felderhoff v. Felderhoff*, 473 S.W.2d 928 (Tex. 1971); *Rigdon v. Rigdon*, 465 S.W.2d 921 (Ky. 1970); *Goller v. White*, 20 Wis.2d 402, 122 N.W.2d 193 (1963).

■ We have now determined that we will join the majority of states in declining to enforce the parental-immunity doctrine where the source of recovery is uninsured motorist benefits under a motor vehicle liability insurance policy. In addressing the policy reasons that long have supported our adherence to parental immunity since the *Rambo* decision in 1938, we first see no damage to the family unit where the insurance company is the true adversary. On this point we are persuaded by the reasoning of the Delaware Supreme Court:

> For these reasons, we are in agreement with the growing number of courts which have reached the following conclusion: when liability insurance exists, the domestic tranquility argument is, at best, hollow. Liability insurance impersonalizes the suit and negates the possible disruption of family harmony by easing the financial repercussions of the accident. In short, when insurance is involved, the action between parent and child is not truly adversary; both parties seek recovery from the insurance carrier to create a fund for the child's medical care and support without depleting the family's other assets.

*Williams*, 369 A.2d at 672 (quoting *Sorensen v. Sorensen*, 369 Mass. 350, 339 N.E.2d 907, 914 (Mass. Supr. 1975)). We can readily understand how an action against a liability insurance carrier might ease the financial crunch caused by an car accident rather than becoming a source of family disharmony. *See Ard v. Ard*, 414 So. 2d 1066 (Fla. 1982).

■ Moreover, the potential for fraud and collusion on the part of parent and child against the insurance company seems no more a factor in this case than in any case where a parent claims benefits against a carrier on behalf of an injured child. *See Ard v.*

*Ard, supra.* Plus, there are the protections against fraud and collusion which are endemic in all litigation:

> Furthermore, it should not be overlooked that the testimony of both parties will be extremely vulnerable to impeachment at trial on the grounds of bias, interest and prejudice. The trial court's responsibility, indeed, its duty, to properly instruct the jury on the credibility of witnesses and the rules governing the weight of evidence will remain unchanged, and, as was stated in *United States v. Freeman*, (2d Cir. 1966), 357 F.2d 606, 620, ". . . it cannot be presumed that juries will check their common sense at the courtroom door."

*Brooks v. Robinson*, 259 Ind. 16, 22, 284 N.E.2d 794, 797 (1972). We are convinced that the judicial process and investigation by the carrier itself will stem the potential for abuse. *See also Transamerica Ins. Co. v. Royle*, 202 Mont. 173, 656 P.2d 820 (1983).

█ █ Finally, the fact that criminal laws provide penalties for child abuse seems largely irrelevant as a justification for the doctrine, since Arkansas has already qualified the parental-immunity rule and excepted intentional torts by a parent. In sum, we are not convinced that the traditional policy reasons sustaining parental immunity are persuasive when the party with the true economic interest at stake is the liability carrier. Moreover, the argument by Southern Farm that the carrier on a subrogation claim may ultimately go against the parent to collect benefits paid and that this would pit the child victim against the parent raises a contingency not at issue in the case before us. In any event, we do not consider it to be a persuasive reason for us not to adopt the exception requested.

█ Southern Farm argues *stare decisis* as a reason to adhere to precedent and our existing common law. But as we have often said: "The proper limitations on the doctrine of *stare decisis* have ever been recognized by this court. 'Precedent, it is said, should not implicitly govern, but discretely guide . . . .'" *Parish v. Pitts*, 244 Ark. 1239, 1252, 429 S.W.2d 45, 52 (1968) (quoting *Roane v. Hinton*, 6 Ark. 525, 527 (1846)). Thus, we have made it clear that we will not blindly follow precedent where that precedent no longer gives a just result. Such is the situation in the case before us.

■ Southern Farm also maintains that changing the parental-immunity doctrine in any fashion is a matter for the General Assembly. Not so. The doctrine is judicially created in this state, as has already been reviewed in this opinion, and has never been the subject of legislative act. Separation of powers is simply not an appropriate argument against limiting the doctrine.

■ As a result, we are convinced that another exception to the parental-immunity doctrine is warranted when a direct-action suit against a motor vehicle liability insurance carrier for uninsured motorist coverage is at issue and when insurance benefits are the damages requested. The exception that we carve out by this opinion is limited to those circumstances. In all other matters, where exceptions have not been made in our case law, we retain the doctrine.

## II. Prospective Application

Southern Farm next contends that if this court does formulate an exception to the parental-immunity doctrine, based on motor vehicle liability coverage, it do so prospectively and not for purposes of the instant case. Southern Farm argues that it had the right to rely on the current state of the law as it existed at the time of the accident in 1997 and that "fundamental fairness" mandates that any change in the parental-immunity doctrine not be applied to this case. In making its argument, Southern Farm cites this court to cases involving a rule of law in making contracts or a rule of law in property when the parties rely on that rule in their dealings. For example, Southern Farm directs our attention to a case where this court changed a rule of law relating to misrepresentation in the issuance of insurance contracts but decided not to apply its holding to the case before it, saying, "[w]e do not know that the parties relied on our old rule in making their contract, but we must assume they did and not apply this decision retroactively." *Southern Farm Bureau Ins. Co. v. Cowger*, 295 Ark. 250, 256, 748 S.W.2d 332, 336 (1988). Likewise, Southern Farm argues that in a 1952 case, we declined to apply the holding to the matter before us, stating that "the parties dealt on the strength of [our prior] holdings, which have become a rule of property, and we must not overrule these cases retroactively. Therefore, insofar as the case at

bar is concerned, it must be affirmed on the strength of our prior holdings." *Hare v. General Contract Purchase Corp.*, 220 Ark. 601, 606-607, 249 S.W.2d 973, 977 (1952).

Fields observes, however, that this court in *Spears v. Spears, supra,* announced that it intended to reexamine the parental-immunity doctrine at the next available opportunity. This court has used the technique of announcing a caveat in the past to alert the bench and bar that a reexamination of the common law may be in order. For example, in the *Hare* case cited above, this court announced a caveat and said "the time has come when we must re-examine these holdings, so we will now give the public a caveat that the holdings in that case were under review." *Hare,* 220 Ark. at 607, 249 S.W.2d at 977. *See also Robinson v. Means* 192 Ark. 816, 95 S.W.2d 98 (1936). Even with the caveat in *Spears,* we are mindful that the accident in the instant case occurred in 1997, and our caveat in the *Spears* decision was not issued until 1999.

Regardless of the timing of our caveat in *Spears,* this court has held that a party who successfully prevails in overturning precedent should be rewarded for that party's industry, expense, and effort. *See Aka v. Jefferson Hosp. Assoc.,* 344 Ark. 627, 42 S.W.3d 508 (2001); *Shannon v. Wilson,* 329 Ark. 143, 947 S.W.2d 349 (1997). We added in *Aka* that otherwise there would be no incentive for a litigant to attack existing precedent, no matter how doubtful or unsound that precedent might be. We therefore applied our opinion retroactively to the *Aka* case but prospectively with regard to all causes of action arising after the opinion became final. *Aka,* 344 Ark. at 643, 42 S.W.3d at 519.

That *Aka* reasoning appears appropriate for the case at hand. We hold that the automobile liability insurance exception identified by this opinion applies to the instant case. With respect to all other causes of action, this opinion applies only if the cause of action arises after this opinion becomes final.

We reverse and remand this case for further proceedings not inconsistent with this opinion.

Reversed and remanded.