Darel LEWIS and Nacona Lewis  *v.*
MID-CENTURY INSURANCE COMPANY

04-1092                                    210 S.W.3d 113

Supreme Court of Arkansas
Opinion delivered June 16, 2005

[Rehearing denied September 8, 2005.]

592

R. *Gunner DeLay*, for appellants.

*Clevenger & Associates, PLLC*, by: *T. Scott Clevenger*, for appellee.

Jim Hannah, Chief Justice. Darel and Nacona Lewis appeal from summary judgment entered in Crawford County Circuit Court and argue that the circuit court erred in finding that Nacona was not entitled to underinsured coverage under her family's policy of insurance with Mid-Century Insurance Company for injuries arising from a one-vehicle accident. The circuit court concluded that the automobile policy at issue only provided for underinsured coverage for damages caused by the operation of an underinsured vehicle. We hold that under the terms of the Mid-Century policy, underinsured coverage also includes sums that the insured is legally entitled to recover as damages from the owner of an underinsured motor vehicle because of bodily injury sustained by the insured. The circuit court is reversed. Our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(b)(1).

*Facts*

On June 7, 2003, Nacona was riding in her family's 1996 Toyota 4-Runner. Nacona's friend B.J. Anderton was the driver, and the 4-Runner was insured by Mid-Century. Anderton failed to negotiate a curve while driving the 4-Runner and lost control of the vehicle, resulting in a one-car accident. Nacona alleges in her complaint that she incurred over $50,000 in medical bills. She made a claim against Anderton, and his insurance carrier paid policy limits of $25,000. Nacona then filed a claim against her own carrier, Mid-Century, under the underinsured provisions. Coverage was denied, and Darel and Nacona filed this declaratory judgment action. Summary judgment was granted based on a finding that there was no coverage under the policy because no underinsured vehicle was involved.

## Standard of Review

Summary judgment is to be granted by a trial court when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Fields v. Southern Farm Bureau Cas. Ins. Co.*, 350 Ark. 75, 87 S.W.3d 224 (2002). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of its motion leave a material fact unanswered. *Id.* This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Our review is not limited to the pleadings, as we also focus on the affidavits and other documents filed by the parties. After reviewing undisputed facts, summary judgment should be denied if, under the evidence, reasonable persons might reach different conclusions from those undisputed facts. *Id.*

## Neither Public Policy nor the Arkansas Statutes Prohibit Underinsured Coverage for a One Vehicle Accident

At issue in this case is whether the Mid–Century policy provided coverage where the underinsured driver was driving a vehicle insured under the Mid–Century policy rather than a vehicle that was underinsured under the driver's insurance policy. Mid-Century correctly asserts that the Arkansas statutes do not require that an auto policy provide underinsured coverage where no underinsured vehicle is involved in the accident. Mid-Century cites us to *Pardon v. Southern Farm Bureau Casualty Insurance*, 315 Ark. 537, 868 S.W. 2d 468 (1994), where this court stated, "we cannot say that a policy requiring another vehicle to trigger the policy's uninsured motorist coverage violates this state's public policy." *Pardon*, 315 Ark. at 539. Mid-Century also cites us to the underinsured statutes. This case involves bodily injury, and Ark. Code Ann. § 23-89-209 (Repl. 2004), provides in pertinent part:

(a)(1) No private passenger automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any

motor vehicles in this state shall be delivered or issued in this state or issued as to any private passenger automobile principally garaged in this state unless the insured has the opportunity, which he or she may reject in writing, to purchase underinsured motorist coverage.

. . .

(3) The coverage shall enable the insured or the insured's legal representative to recover from the insurer the amount of damages for bodily injuries to or death of an insured which the insured is legally entitled to recover from the owner or operator of another motor vehicle whenever the liability insurance limits of the other owner or operator are less than the amount of the damages incurred by the insured.

Ark. Code Ann. § 23-89-209(a)(1) and (3) (Repl. 2004). While as Mid-Century notes, Ark. Code Ann. § 23-89-209(a)(3) provides that underinsured coverage must provide coverage for damages from the operator of another vehicle, there is nothing in the statute that says the parties may not agree that the underinsured coverage extends to operation of the insured vehicle by an underinsured driver. Parties are free to contract for insurance on such terms as they may agree, and the agreement will be enforced by the courts to the extent it is not violative of state law. *Chamberlin v. State Farm Mut. Ins. Co.*, 343 Ark. 392, 36 S.W.3d 281 (2001). The question that must be answered is whether the parties agreed to coverage greater than that required by statute.

### The Policy Provides Coverage

■ The law regarding construction of an insurance contract is well settled. "If the language of the policy is unambiguous, we will give effect to the plain language of the policy without resorting to the rules of construction." *Elam v. First Unum Life Ins. Co.*, 346 Ark. 291, 297, 57 S.W.3d 165 (2001). On the other hand, if the language is ambiguous, we will construe the policy liberally in favor of the insured and strictly against the insurer. *Id.* Policy language is ambiguous if there is doubt or uncertainty as to its meaning and it is fairly susceptible to more than one reasonable interpretation. *Id.*

■■ The issue in this case is whether the terms of the policy at issue provide underinsured coverage for bodily injury

suffered by an insured person in a one-vehicle accident caused by an underinsured driver driving the vehicle insured under the policy. The policy provides:

### PART II — UNINSURED MOTORISTS

#### Coverage C — Uninsured Motorist Coverage

#### (Including Underinsured Motorist Coverage)

We will pay all sums which an **insured person** is legally entitled to recover as **damages** from the owner or operator of an **uninsured motor vehicle** because of **bodily injury** sustained by the **insured person**. The **bodily injury** must be caused by **accident** and arise out of the ownership, maintenance or use of the **uninsured motor vehicle**.

Thus, the uninsured provision appears to require that the bodily injury arise from involvement of the uninsured vehicle in the accident. We note that while this provision uses the term "uninsured," it also includes the language, "(Including Underinsured Motorist Coverage)" in the title. Just what that means is unclear. However, underinsured coverage is directly addressed in endorsement s1879, which provides:

#### COVERAGE C–I

#### UNDERinsured MOTORIST COVERAGE

For an additional premium, it is agreed that UNDERinsured Motorist Coverage C-1 is added to Part II of your policy.

We will pay all sums which an **insured person** is legally entitled to recover as **damages** from the owner or operator of an **UNDERinsured motor vehicle** because of **bodily injury** sustained by the **insured person**.

The endorsement contains definitions for underinsured coverage:

**Underinsured Motor Vehicle** — means a land motor vehicle which is insured by a **bodily injury** bond or policy at the time of the accident, and provides coverage less than an **Insured person** is legally entitled to recover as damages because of **bodily injury** sustained by an **Insured person**.

**Underinsured Motor Vehicle** does not include a land motor vehicle:

a. insured under the liability coverage of this policy;

b. owned by or furnished or available for the regular use of you or any **family member**;

. . .

We also note that endorsement s1879 ends with the following language:

Under Part II of the policy the provisions that apply to Exclusions, Limits of Liability, Other Insurance and Arbitration remain the same and apply to this endorsement except where stated otherwise in this endorsement.

This endorsement is part of your policy. It supercedes and controls anything to the contrary. It is otherwise subject to all other terms of the policy.

Thus, the underinsured provisions of endorsement s1879 make coverage dependent upon involvement of the "owner or operator" of an underinsured vehicle. The language from the body of the policy on uninsured coverage stating that the accident must arise out of the ownership, maintenance, or use of the uninsured motor vehicle is not present, and we are told that this provision supercedes any language to the contrary. Mid–Century cites us to *Alberson v. Automobile Club Interinsurance Agency Exchange*, 71 Ark. App. 162, 27 S.W. 3d 447 (2000). However, that case involved assertion of a right to underinsured coverage in the same policy under which they sought liability coverage. In the case before us, the Lewises obtained liability coverage under Anderton's policy. We are also cited to *Foster v. Farm Bureau Mut. Insurance Co.*, 71 Ark. App. 132, 27 S.W. 3d 464 (2000). However, *Foster* discusses an alleged extension of the definition of who was an insured under the policy. Neither case is on point.

At best, the policy is ambiguous on the question of whether the underinsured vehicle must be involved in the accident or whether involvement of the underinsured driver is sufficient. Where policy language is ambiguous, we will construe the policy liberally in favor of the insured and strictly against the insurer.

*Elam, supra.* Therefore, we hold that under the language of the Mid-Century policy at issue, coverage exists where the accident is caused by an underinsured driver and that no involvement of the underinsured vehicle is required.

GLAZE, J., dissents.